[L. A. No. 12311. In Bank.—March 26, 1931.]

THE PEOPLE on Relátion of FRED G. STEVENOT, etc., Respondent, v. ASSOCIATED OIL COMPANY et al., Defendants; TWIN BELL OIL SYNDICATE et al., Appellants.

Neil S. McCarthy, Earl L. Banta, Harmel L. Pratt and Howard P. Hall for Appellants.

James S. Bennett and U. S. Webb, Attorney-General, for Respondent.

M. G. Sloss and Arthur R. Smiley, *Amici Curiae.*

SHENK, J.—This is an appeal from an order granting a preliminary injunction. The action was brought against some forty-three oil producers in the Santa Fe Springs Oil Field in Los Angeles County to enjoin the unreasonable waste of natural gas pursuant to the provisions of the so-called "Oil and Gas Conservation Act" of 1915 (Stats. 1915, p. 1404), as amended in 1929 (Stats. 1929, p. 923). After notice and hearing the court, on March 19, 1930, issued a temporary injunction as prayed for in the complaint. The terms of this injunction were modified on March 28, 1930. From the injunction as modified this appeal was taken by three of the defendants in the action, to wit: Twin Bell Syndicate, Second Twin Bell Syndicate and Star Petroleum Company. An application was then made by these appellants for a writ of *supersedeas* to stay the operation of the injunction pending the appeal therefrom. The application

was denied by this court on December 3, 1930. (*People* v. *Associated Oil Co. et al.*, 211 Cal. 93 [294 Pac. 717].)

The order appealed from is attacked first on the ground that the statute under which the action was brought is unconstitutional, and secondly that the injunction issued is void as to these appellants by reason of alleged discrimination against them, but particularly as against the operations of well No. 4 of the Star Petroleum Company.

The questions involving the alleged unconstitutionality of the statute were presented for determination and were decided by this court contrary to the appellants' contentions upon the application for the writ of *supersedeas*. The terms of the temporary injunction were also set forth in the opinion rendered on that application.

It will be unnecessary to discuss the several questions raised by the appellants as to the alleged unconstitutionality of the statute for the reason that they are the same as those presented and determined in the former proceeding. It was also there stated by this court that, conceding the effect of the preliminary injunction to be that Star Well No. 4 would have to be shut down, the showing of the unreasonable waste of gas therefrom would justify it.

When the matter of the present appeal came on for argument on December 5, 1930, counsel for the appellants stated that the effect of the preliminary injunction had been in fact to kill Star Well No. 4 and that the circumstances thereof demonstrated the discriminatory character of the injunction order as to that company; whereupon counsel for the respondent immediately disputed the fact. Thereafter on December 9, 1930, the respondent filed an application herein for leave to produce evidence pursuant to section 956a of the Code of Civil Procedure as interpreted in *Tupman* v. *Haberkern*, 208 Cal. 256 [280 Pac. 970]. In response to the application an appropriate order was entered in the minutes of this court; the Honorable Leon R. Yankwich, a judge of the Superior Court in and for the County of Los Angeles, was appointed a referee to take the evidence either orally or by affidavit and report the same to this court. In due time the referee filed his report which consists of affidavits and exhibits attached thereto presented by the respective parties. This evidence shows beyond dispute that Star Well No. 4 has been on

continuous production from a time prior to the commencement of the action until the expiration of the time covered by the referee's report, which included the entire month of December, 1930. During the month of March, 1930, when the original injunctive order was issued, the daily average production of gas in the entire Santa Fe Springs oil-field was 565,705,000 cubic feet per day. The injunctive order fixed the allowable daily production at 334,000,000 cubic feet per day. Taking into consideration and eliminating the amount of gas put to beneficial use, the court determined that any additional blow into the air in excess of 100,000,000 cubic feet per day was unreasonable waste. The Star Petroleum Company was originally allowed 3,000,000 cubic feet per day. By the modified order this company was allowed 3,285,000 cubic feet per day. This was an allowance to these appellants of 4,000 cubic feet of gas to each barrel of oil produced, as against an average of 2,600 cubic feet of gas to each barrel of oil throughout the entire field. On this state of the facts any claim of unlawful discrimination between the Star Petroleum Company and other operators in the field would seem to be without merit.

The record now before us shows that from March until June of 1930 the Star Petroleum Company far exceeded the allowance of gas specified in the order of court and that it came within the allowance only because the average daily production of gas in the entire field declined to such an extent that this company could not produce even the allowable amount, due to the depletion of gas in the zones in the field. In January of this year the daily average of production of gas in the entire field was reduced to 177,251,000 cubic feet. This reduction was due wholly to the decrease in gas pressure in the various sands of the field. The production of oil in the whole field was necessarily reduced proportionately. It therefore appears that the effort on the part of the state to prevent the improvident and wasteful use of natural gas has been frustrated by unregulated operations in the field or by operations conducted in spite of attempted regulation, with the result that the further recovery of oil in the discovered zones in this field has been unduly reduced by the heretofore wasteful process, and that such further recovery must depend on artificial gas repressuring or putting the wells on pumps. It is estimated that only about twenty

per cent of the gas has been beneficially used and that a very large proportion of the oil deposit has not been recovered from the discovered and developed zones in this field. It would seem to require no argument to support the statement that such a situation falls within the purview of public regulation under the police power, not only to the end of protecting the correlative rights of the owners and operators in this field, but also the rights of the public which has a direct interest in safeguarding this important natural resource.

The appellants, particularly the Star Petroleum Company with reference to its well No. 4, insist that if it had been compelled to observe the injunctive order it would have been required to shut down the well, but there is no showing that it endeavored to comply with the order by "beaning back" (restricting the outlet), or by the employment of other means to prevent the prohibited waste. It is insisted that this appellant is being penalized because it happened to strike the top of the structure where the gas pressure was greatest. In effect this is a contention that it should be permitted to exercise a right to the prejudice of a coequal right possessed by its neighbors in the field. This contention cannot be sustained on well-known principles of law with reference to the exercise of rights in private property generally, but it also runs counter to adjudications on the subject of gas and oil development regulations by the highest court in the land. (*Ohio Oil Co.* v. *Indiana,* 177 U. S. 190 [44 L. Ed. 729, 20 Sup. Ct. Rep. 576] ; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61 [Ann. Cas. 1912C, 160, 55 L. Ed. 369, 31 Sup. Ct. Rep. 337] ; *Standard Oil Co.* v. *United States,* 221 U. S. 1 [Ann. Cas. 1912D, 734, 34 L. R. A. (N. S.) 834, 31 Sup. Ct. Rep. 502] ; *Walls* v. *Midland Carbon Co.,* 254 U. S. 300 [65 L. Ed. 276, 41 Sup. Ct. Rep. 118].) The decisions of the Supreme Court of the United States have recognized and determined that the states have the right to enact laws, under the police power, providing for the conservation of the oil and gas resources within their borders and that such laws, if not clearly arbitrary or unreasonable, do not contravene the due process and equal protection provisions of the federal Constitution nor take property for public use without compensation. In harmony with the reasoning of the Supreme

Court of the United States in the foregoing cases, conservation measures have been approved by the highest courts of the oil and gas producing states, as is shown by the many cases cited from those jurisdictions in the briefs of the respondent and *amicus curiae*, with the exception of Montana (*Gas Products Co.* v. *Rankin*, 63 Mont. 372 [24 A. L. R. 294, 207 Pac. 993]).

 We reiterate that the legislation in question has lawfully vested in the superior court the power to determine what wastage of gas in the production of oil is reasonable or unreasonable. Whether such wastage be reasonable or unreasonable is a question of fact and should be determined in view of the necessity of one land owner to make productive use of his parcel, in view of the equal right of the adjoining owners not to be deprived of correlative production from their parcels and in view of the right of the public to prevent the waste of that which cannot be replaced.

The preliminary injunction generally is supported by the facts presented to the court. That these particular appellants have not been discriminated against is evidenced by the terms of the order itself and by the record present before the trial court and before this court on the supplemental hearing.

The order is therefore affirmed.

Preston, J., Richards, J., Seawell, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.