[Civ. No. 10951. First Appellate District, Division Two.—November 7, 1938.]

IVAR LARSON, Petitioner, v. R. D. BUSH, as State Oil and Gas Supervisors, Respondent.

44

[redacted]

John V. Cooper for Petitioner.

Herbert Moore, as *Amicus Curiae*, on Behalf of Petitioner.

U. S. Webb, Attorney-General, and R. L. Chamberlain, Deputy Attorney-General, for Respondent.

NOURSE, P. J.—An alternative writ of mandate was issued herein by the Supreme Court, and the cause was thereupon transferred to this court for hearing and decision. The petition attacks the validity of the statute regulating the spacing of oil and gas wells; the return is by way of demurrer affirming the validity of the statute, but raising no dispute upon the facts.

Petitioner is lessee of several lots of land in the Wilmington oil field in the city of Long Beach. The lots are not contiguous, but are separated by another lot forty feet in width and by a public street sixty feet in width. The entire acreage is a little more than one acre in area. Other wells are being drilled in the immediate vicinity, and petitioner alleges that these will drain the oil from beneath the property which he holds. Due application was made to respondent for a permit to drill upon these lots, and the permit was denied because of the restrictions of the statute.

The pertinent provisions of the statute (Stats. 1931, p. 1277, Deering's Gen. Laws, Act No. 5637) read: "Any well hereafter drilled for petroleum oil or gas or both, or any such well hereafter drilled and permitted to produce petroleum oil or gas or both which is located within one hundred feet of an outer boundary of .the parcel of land on which

such well is situated or within one hundred feet of a public street or road or highway dedicated prior to the commencement of drilling of such well . . . is hereby declared a public nuisance . . . provided, that when a parcel of land contains one acre or more, but is less than two hundred fifty feet in width, then there may be drilled on said parcel of land not more than one well to each acre of the area if the well is so placed as to be as far from the lateral boundary lines of said parcel of land as the configuration of the surface and the existing improvements thereon will permit . . . ''

The purposes of the legislation are stated in the title to be the protection of persons and property against danger from fire and explosion in oil and gas wells when operated in proximity to public streets and to other wells. The act contains a provision that if any section, phrase, or proviso is held unconstitutional, such decision shall not affect the remaining portions of the act.

The petitioner concedes that he is unable to bring his case within the main provisions of the act which prohibit drilling within one hundred feet of a public street and one hundred feet of the property line. He contends that the proviso which permits drilling within those limits under certain conditions is discriminatory and demands that we rewrite this proviso so that it may include conditions which he will be able to meet. Several sections of the Constitution, both federal and state, are relied on, but they do not require specific citation. The question at issue is whether the act offends due process or grants special privileges or immunities.

The case is controlled by these settled principles:

(1) ''A police regulation, obviously intended as such, and not operating unreasonably beyond the occasions of its enactment, is not rendered invalid by the fact that it may affect incidentally the exercise of some right guaranteed by the Constitution.'' (11 Am. Jur., p. 991.)

(2) The courts of this state will take judicial notice that, though the operation of oil wells is not a nuisance *per se*, it may create a public hazard and danger. (See *Green* v. *General Petroleum Corp.*, 205 Cal. 328 [270 Pac. 952, 60 A. L. R. 475].)

(3) The legislature has primary power to enact such reasonable police regulations as it may deem necessary for the protection of the public, and to subject private prop-

erty and private business to such regulations in the interest of public health, safety and welfare. The limitations on this power are that the regulations cannot be arbitrary, discriminatory, or unreasonable. But it has been said: ''The principle involved in these decisions is that where the legislative action is arbitrary and has no reasonable relation to a purpose which it is competent for government to effect, the legislature transcends the limits of its power in interfering with liberty of contract; but where there is reasonable relation to an object within the governmental authority, the exercise of the legislative discretion is not subject to judicial review. The scope of judicial inquiry in deciding the question of *power* is not to be confused with the scope of legislative considerations in dealing with the matter of policy. Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance.'' (*Chicago, B. & Quincy R. R. Co.* v. *McGuire*, 219 U. S. 549, 569 [31 Sup. Ct. 259, 55 L. Ed. 328].)

■ (4) The primary regulations of the statute which prohibit drilling for oil or gas within one hundred feet of a public street or boundary line are manifestly police regulations for the protection of the public safety and welfare and offend no constitutional right or privilege. (*Winkler* v. *Anderson*, 104 Kan. 1 [177 Pac. 521, 522, 3 A. L. R. 268]. See, also, *Railroad Com.* v. *Marathon Oil Co.*, (Tex. Civ. App.) 89 S. W. (2d) 517, and *Oxford Oil Co.* v. *Atlantic Oil Producing Co.*, 22 Fed. (2d) 597, and cases cited in those decisions involving similar regulations of the state of Texas.)

■ Being unable to bring himself within the terms of the act proper, the petitioner is forced to the contention that the proviso is arbitrary and discriminatory as to owners of noncontiguous acreage and that we should therefore hold that this proviso should be extended to cover his case. This we cannot do. If the proviso is unconstitutional, it alone falls. The statute so declares, but if it did not, such is the accepted rule. (*People* v. *Monterey Fish Products Co.*, 195 Cal. 548, 556 [234 Pac. 398, 38 A. L. R. 1186]; 5 Cal. Jur.

Supp. 768.) Here, in view of the express legislative declaration, we cannot say that the proviso is so inherently related to the general purposes of the statute that the legislature would not have enacted the statute without the proviso. Hence, to grant the relief prayed for, it would be necessary for us to rewrite the statute.

The legislation is comparatively new. We have cited the only authorities which we have found covering similar enactments. We must presume that it was passed for a lawful purpose as expressed in the title. That it produces inequality in some degree in its application to some property owners must be conceded. But every classification of persons and things for regulation does not offend the constitutional rights for that reason. (*Bayside Fish Flour Co.* v. *Gentry,* 297 U. S. 422, 430 [56 Sup. Ct. 513, 80 L. Ed. 772].)

The case presents such a situation as that referred to in *German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389, 409 [34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189], where the court said: ''Against that conservatism of the mind, which puts to question every new act of regulating legislation and regards the legislation invalid or dangerous until it has become familiar, government—state and National—has pressed on in the general welfare; and our reports are full of cases where in instance after instance the exercise of regulations was resisted and yet sustained against attacks asserted to be justified by the Constitution of the United States. The dread of the moment having passed, no one is now heard to say that rights were restrained or their constitutional guaranties impaired.''

The alternative writ is discharged and the peremptory writ is denied.

Sturtevant, J., and Spence, J., concurred.