### RAILROAD COMMISSION v. MAGNOLIA PETROLEUM CO. (two cases).
### Nos. 9324, 9325.

Court of Civil Appeals of Texas. Austin.
March 3, 1943.

Gerald C. Mann, Atty. Gen., and E. R. Simmons, Lloyd Armstrong, and James D. Smullen, Asst. Attys. Gen., for appellant.

Walace Hawkins, of Dallas, and Dan Moody and J. B. Robertson, both of Austin, for appellee.

BLAIR, Justice.

Cause No. 9324, Railroad Commission v. Magnolia Petroleum Company, and cause

No. 9325, Railroad Commission v. Magnolia Petroleum Company are Rule 37 cases, which involve two separate tracts of land, but present entirely similar facts and are controlled by the same principles of law. They were briefed and presented in this court together, and this opinion will be filed in and will dispose of each case.

With respect to the first case, the Magnolia applied to the Commission for a permit to drill well No. 15 on its 59.91-acre Hobart Key Lease in the D. Moore and John Ruddle Surveys, Gregg County, Texas, on the ground that the well was necessary to prevent confiscation of its property. The Commission denied the permit. On the appeal and trial de novo Magnolia alleged and the undisputed proof showed that its lease had one well to 4.28 acres as compared to one well to 3.47 acres on the adjacent leases within an eight times rectangular area surrounding the lease; that with well No. 15 the density of drilling on Magnolia's lease would be one well to 3.99 acres; and that at the time the permit for well No. 15 was applied for and denied considerable drainage of oil from Magnolia's lease to the adjacent leases within the eight times area was taking place, because of more wells and denser drilling on the adjacent leases; the producing structure of the eight times area and that section of the field known as the Fairway being substantially the same. Magnolia also alleged and the undisputed evidence showed that just prior to the time it applied for well No. 15, the Commission granted to the Bristow, Winn and Bailey lease well No. 9, located within 210 feet of Magnolia's south line, which drained oil from Magnolia's lease, and which with eight other wells on the Bristow lease gave it a density of one well to 3.11 acres; and that because of this well and the fact that the eight times area surrounding the lease was more densely drilled, the net result was considerable drainage from Magnolia's lease, which could be stopped or minimized only by drilling well No. 15 on the Magnolia lease at the point requested. Upon this undisputed evidence the trial court set aside the order of the Commission denying well No. 15, and enjoined the Commission from interfering with the drilling and production of oil from it.

With respect to the second case, Magnolia applied to the Commission for a permit to drill well No. 30 on its 44.61-acre Griffin lease, Mary Van Winkle survey, Gregg County, Texas; but in fact the well was the 29th well on the tract, which resulted from the fact that an application for well No. 16, was filed, but was neither urged nor granted, and was in the dead files of the Commission. This well was applied for on the ground that it was necessary to prevent confiscation of Magnolia's property. The Commission denied the permit. On the appeal and trial de novo Magnolia alleged and the undisputed proof showed that this lease at the time of the application and hearing in question had one well to 1.54 acres as compared to one well to .84 acre on the adjacent leases within an eight times area surrounding the lease; that with well No. 30 actually the 29th on the Magnolia's lease, it would be drilled to a density of one well to a little more than 1.53 acres as compared to density of one well to .84 acre on the adjacent leases within the eight times area; and that at the time the permit was denied for the well in question considerable drainage of oil from Magnolia's lease to the adjacent leases within the eight times area was taking place, because of more wells and denser drilling on the eight times area; the producing structure of all leases involved being substantially the same, the lease being in what is known as the Fairway of the East Texas Oil Field. Magnolia also alleged and the undisputed proof showed that prior to the time it applied for the well in question the Commission had granted a permit to drill Bostex A Speer Well No. 6; that it was draining oil from Magnolia's lease; that Magnolia had no offset to it; and that because of this fact and the fact that the eight times area was more densely drilled the net result was drainage from Magnolia's lease to the surrounding leases, which could be stopped or minimized only by drilling the well in question at the point requested. Upon this undisputed evidence the trial court set aside the order of the Commission denying the permit, and enjoined it from interfering with the drilling and production of oil from it.

The undisputed evidence in both cases showed that all oil which was originally in place beneath all of the leases within the area involved had been produced; that eastward migration of oil had refilled them, and each lease had now underneath it as much oil as was originally in place; and that they will continue to be refilled with such migratory oil, which is occurring as

the result of physical conditions and the natural laws and cannot be stopped; and that all leases in the area will produce more oil than was originally under them or under them at the time of the hearing before the Commission.

The Commission offered no evidence in either case. In its brief it states that no question of unusual underground conditions is involved; nor is any issue made by pleading and proof that waste of oil will occur if the wells in question are drilled. It contends that the evidence adduced is not sufficient to show that the Commission acted arbitrarily in denying either of the permits, and was not sufficient to overcome the prima facie validity of the orders denying them. The brief further states that: "The question here presented is an important and far-reaching one. It was inevitable that an appellate court should be called upon to determine it. Doubly important now is it for it involves the solution to one of the major dilemas of the great East Texas Field: the stoppage of unnecessary wasteful drilling."

It is also further contended that the eight times area rule cannot be taken as a conclusive criterion; and that where the evidence shows that a tract has recovered all the oil that originally lay beneath it, no issue of confiscation can thereafter arise. Such is not the test of confiscation and no case cited by the Commission so holds.

■ Beginning with the earliest cases the courts have uniformly held that a leaseholder or owner is entitled to drill for and produce the equivalent of the recoverable oil under his land, and this rule applies to oil which originally lay beneath the land as well as to oil which migrates to the land as the result of physical conditions and natural laws relating to the fugacious nature of oil. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566.

■ In the case of Railroad Commission v. Bass, 10 S.W.2d 586, 588, this court held that a leaseholder or owner is entitled to drill a sufficient number of wells to enable him to "have an equal opportunity with adjoining leaseholders of developing and realizing for his leasehold." This rule was made the test of confiscation and the rule has never been questioned.

■ Again, in the case of Atlantic Oil Production Co. v. Railroad Commission, 85 S.W.2d 655, 657, this court held that the proper test of confiscation was whether a lessee or owner was "accorded an equal opportunity with surrounding lessees to recover his fair share of the recoverable oil; or, stated differently, to recover the approximate amount of oil lying in place under his lease." This means oil lying in place when it is sought to be recovered, and applies to all oil originally beneath the land, and all oil which migrated thereto under the laws of nature. In the Atlantic case this court further say: "Appellee's right to the third' well rests alone upon the relative positions of these wells, coupled with the fact that the water pressure is from the west, which gives wells to the east an advantage. This advantage, however, is a natural one, which would exist independently of any conservational regulation."

■ The undisputed evidence in these two cases shows that Magnolia, without the wells in question, has not been accorded an equal opportunity with the surrounding lessees to recover its fair share of the recoverable oil lying in place beneath its leases. Having refused to permit the wells under the facts stated the Commission necessarily acted arbitrarily; and it cannot "indulge in unreasonable discriminations between different oil fields, or between different tracts of land in the same field." Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, 85; Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022.

The judgment of the trial court in each of these cases is affirmed.