[L. A. No. 19764. In Bank. Mar. 8, 1947.]

SAM BERNSTEIN et al., Petitioners, v. R. D. BUSH, as State Oil and Gas Supervisor, Respondent.

Boone & Stachell for Petitioners.

Robert W. Kenny, Attorney General, and R. L. Chamberlain, Deputy Attorney General, for Respondent.

SHENK, J.—This is an application for the writ of mandate to compel the respondent, State Oil and Gas Supervisor, to grant to the petitioners a permit to drill for oil and gas upon the lease and properties owned by them. The petition shows the following:

The petitioners own several parcels of land in the city of Long Beach, located in what is known as the Long Beach Harbor Area of the Wilmington Oil Field. This area is subdivided into town lots of approximately 3,000 square feet each, and is intersected by streets and highways.

The development of the Wilmington Oil Field was started in 1936, by the General Petroleum Corporation of California. In 1931, the Legislature had enacted a statute relating to the spacing of oil wells (Stats. 1931, p. 1277, as amended, now Pub. Resources Code, §§ 3600-3607). A provision of the statute (now Pub. Resources Code, § 3600) declared any well to be a public nuisance which was thereafter drilled for oil or gas and which was located within one hundred feet of the outer boundary of the parcel of land (which might comprise several contiguous parcels operated as one lease, § 3601) on which the well was situated, or within one hundred feet of a public street or highway dedicated prior to the commencement of drilling, or within one hundred fifty feet of a well being drilled or theretofore drilled and which was producing or capable of producing oil or gas. Exceptions to the spacing regulations were provided. Where a parcel of land containing an acre or more was less than two hundred fifty feet in width, not more than one well to the acre might be drilled if the same were placed as far from the lateral boundary lines as the configuration of the surface and the existing improvements would permit (§ 3602). It was provided that spacing regulations should not apply to a field producing oil or gas on August 14, 1931 (§ 3605). Two other exceptions were contained in sections 3606 and 3607 of the Public Resources Code added in 1945 (Stats. 1945, pp. 625, 626) as an emergency to

stimulate oil production in the war effort. Section 3606 permits slant drilling outside of the boundaries of a parcel containing an acre or more whose surface is unavailable for the location of wells, and provides for certain minimum spacing. Section 3607 states that the prohibition against drilling within one hundred feet of any public street or highway shall not apply to a street or highway which is opened through a field in which drilling was commenced prior to the opening of the street or highway. Section 3604 provides that each day in which a well is drilled or permitted to produce in violation of the foregoing provisions shall constitute a separate nuisance.

Wells have been drilled in the Long Beach Harbor Area under leases covering contiguous lots aggregating one acre or more; and it is asserted that many wells have been located pursuant to the exceptions to the spacing requirements of section 3600. It is alleged that due to the leasing by General Petroleum Corporation of California of strategic acre parcels, certain single lots of less than one acre owned by the petitioners, and located in the area overlying the oil basin, have been isolated and cut off from participation in the leases and the royalties from oil produced from adjacent property. The isolated parcels, six in number, are scattered throughout the area and are noncontiguous. Although the area of each is less than one acre, the aggregate area of all is more than one acre. It is stated that the drilling of a well on some portion of the petitioners' properties will not cause the number of wells to exceed the number of acres in the field.

The petitioners, owners of the isolated noncontiguous lots in the oil field, entered into a community oil and gas lease with the petitioner Bernstein. On May 2, 1946, Bernstein, pursuant to sections 3203 and 3204 of the Public Resources Code, filed with the respondent State Oil and Gas Supervisor a notice of intention to drill an oil and gas well on a specified lot included in the petitioners' properties, and deposited with the respondent the required bond. On May 8, 1946, the respondent issued a disapproval of the proposal for the reason that, although the parcels involved in the lease comprised an acre or more, they were noncontiguous and a well drilled on any one of them would constitute a public nuisance within the meaning of section 3600 of the Public Resources Code. Whereupon the present petition was filed in this court.

It is asserted that the application for the writ was made to this court in the first instance because of an alleged emer-

gency created by the recent discovery and development of a new oil sand underlying the petitioners' properties at an approximate depth of 6,000 feet, and that several producing wells have already been drilled into that oil sand; also because the drilling of an oil well on the petitioners' properties without the approval of the respondent or a disposition of the questions here presented favorable to them would subject the petitioners to prosecution on the grounds that the proposed well, if drilled, would constitute a public nuisance. The alternative writ was issued, and the matter is submitted on the petition, and the demurrer and answer of the respondent. A determination of the issues of law raised by the general demurrer will dispose of the controversy.

It is the petitioners' position that sections 3600-3607 of the Public Resources Code violate the special privileges and immunities clauses of the United States Constitution (§ 1 of the XIV Amendment), and of the California Constitution (Art. I, § 21; Art. IV, § 25, subd. 19) ; that they deny the equal protection guaranteed by the XIV Amendment of the United States Constitution, and deprive the petitioners of their property without due process of law.

The respondent asserts that the foregoing provisions of the Public Resources Code were enacted pursuant to the police power of the State of California for the protection and preservation of the public peace, health, safety, and the general welfare; that the spacing requirements are reasonably necessary for the purpose intended; that they are not discriminatory, and that they do not constitute an unlawful invasion of the petitioners' constitutional rights.

The petitioners refer to the preamble of the 1931 statute enacting well-spacing provisions, wherein it was declared that it was the purpose of the act to protect persons and property against danger from fire and explosion in petroleum or gas wells. This declaration does not appear in the Public Resources Code. The respondent asserts that the prevention of waste and the conservation of natural resources might also have been within the legislative purpose. Since both public safety and conservation are legitimate objectives in the exercise of the police power it is unnecessary to determine the respects in which the code provisions are related to either purpose. The statute clearly indicates that in the interests of utilizing the greatest production without unnecessary waste the Legislature made exceptions to the general spacing re-

quirements which were declared to have been enacted as a protection against fire, explosion, and other hazards.

The courts of this state have uniformly recognized the power of the Legislature to enact police regulations to prevent the waste of natural resources. (*People* v. *Associated Oil Co.*, 212 Cal. 76 [297 P. 536]; *People* v. *Associated Oil Co.*, 211 Cal. 93 [294 P. 717]; *Pacific Palisades Assn.* v. *City of Huntington Beach*, 196 Cal. 211, 217 [237 P. 538, 40 A.L.R. 782]; *Bandini Petroleum Co.* v. *Superior Court*, 110 Cal.App. 123 [293 P. 899], affirmed 284 U.S. 8 [52 S.Ct. 103, 76 L.Ed. 136].)

The intendments favor the constitutionality of such enactments, but the courts are repeatedly called upon to determine whether they violate the fundamental rights of those adversely affected.

It is not always enough to say that the injury or detriment suffered by a property owner as a result of the exercise of the police power within a legitimate sphere is *damnum absque injuria*. (Cf. *Larson* v. *Bush*, 29 Cal.App.2d 43 [83 P.2d 955].) Instances where that was the necessary result of the legislation are numerous. Zoning regulations are familiar examples. As applied to oil well operations an absolute and all-inclusive prohibition against the drilling for oil and gas in a specified district zoned as residential was deemed reasonable and constitutional. (*Cromwell-Franklin Oil Co.* v. *Oklahoma City*, 14 F.Supp. 370.) A statute which forbids the drilling of a well within 100 feet of a railroad right of way was upheld as a constitutional exercise of the police power. (*Winkler* v. *Anderson*, 104 Kan. 1 [177 P. 521, 3 A.L.R. 268].)

The present legislation, however, is not in that category. It contemplates that oil and gas wells will be drilled on the private property overlying the source of supply, and assumes to regulate the spacing of the wells thereon in the interests of the public safety and the conservation of natural resources. The face of the legislation may appear to be valid, and insofar as it can be complied with and applied without a denial of constitutional rights it will be held to be proper and lawful legislation. ■ But a statute, innocuous and valid on its face, may become invalid in its application, in which event it is proper for the petitioner to show the facts by which he contends that as to him the law is unreasonable, oppressive and void. (*In re Smith*, 143 Cal. 368, 370 [77 P. 180].) In that case, at page 371, it was said that when the police power is exerted to regulate a useful business or occupation, the

Legislature is not the exclusive judge as to what is a reasonable and just restraint upon the constitutional right of the citizen to pursue the business or occupation; that it is always a judicial question whether the particular regulation of the right is a valid exercise of the police power, although the authority of the courts to declare a regulation invalid will be exercised with caution and only when it is clear that the law exceeds the limits of legislative power and infringes upon rights guaranteed by the Constitution. (See, also, *Dobbins* v. *Los Angeles,* 195 U.S. 223, 237 [25 S.Ct. 18, 49 L.Ed. 169].) In *Skalko* v. *City of Sunnyvale,* 14 Cal.2d 213, 216 [93 P.2d 93], this court recognized that a police regulation, valid when adopted, might become invalid in its operation in particular instances. The same principle was stated in *Bandini Petroleum Co.* v. *Superior Court,* 284 U.S. 8, 22 [52 S.Ct. 103, 76 L.Ed. 136], where the Supreme Court upheld a California statute regulating the exercise of the correlative rights of surface owners with respect to a common source of supply of oil and gas as "valid upon its face, that is, considered apart from any attempted application of it in administration which might violate constitutional right. . . ."

Here then we are more directly concerned with the contention of the petitioners that in its application to them the statute is discriminatory and therefore unconstitutional. They assert that such discrimination results from the fact that the enforcement of the regulations permits some owners of lands overlying the oil basin to exercise and enjoy their property right to take oil from the field, while the petitioners, who are property owners overlying the same oil supply, are deprived of the use and enjoyment of their coequal right. The mere assertion of the problem suggests the answer.

Under the law of this state the landowner has a property right in oil and gas beneath the surface, not in the nature of an absolute title to the oil and gas in place, but as an exclusive right to drill upon his property for these substances. His unqualified and absolute title attaches after the substances have been reduced to possession. (*Tanner* v. *Title Ins. & Trust Co.,* 20 Cal.2d 814, 819 [129 P.2d 383]; *Bandini Petroleum Co.* v. *Superior Court, supra,* 110 Cal.App. 123, 127.) This is a right which is "as much entitled to protection as the property itself, and the undue restriction of the use thereof is as much a taking 'for constitutional purposes as appropriating or destroying it.'" (*People* v. *Associated Oil Co., supra,* 211 Cal. at pp. 99-100 and cases cited.)

In *Ohio Oil Co.* v. *Indiana,* 177 U.S. 190, at 209 [20 S.Ct. 576, 44 L.Ed. 729], involving an oil and gas conservation measure, the Supreme Court said that all (not some) of the surface proprietors within an oil and gas field have the right to reduce to possession the oil and gas beneath the surface, and that they could not be absolutely deprived of that right without a taking of private property. The court went on to consider the owners' coequal right to take from the common source of supply, observing that one owner should not be permitted to convert an undue proportion of the supply to the detriment of others; hence that from the peculiar nature of the property right, the legislative power might be exerted in the protection of all the collective owners by securing a just distribution among them. Thus the Supreme Court held that a statute designed to protect life and property or prevent waste, or both, must apply without discriminating against the coequal rights of the property owners; also that a police regulation otherwise reasonable which was designed to secure to each a just distribution from the common source of the supply of oil and gas, took proper cognizance of the property owners' rights. (See, also, *Gulf Land Co.* v. *Atlantic Refining Co.,* 134 Tex. 59 [131 S.W.2d 73].) In the latter case it was said that the denial to one surface owner of his fair chance to recover in kind the oil and gas beneath the surface, or its equivalent, would be a confiscation of his property.

In *Railroad Commission* v. *Magnolia Petroleum Co.,* (Court of Civil Appeals of Texas) 169 S.W.2d 253, the test of confiscation was said to be the denial to one of the property owners of the equal opportunity with adjoining leaseholders to develop and realize the benefits from his leasehold; and it was concluded that confiscation resulted from the commission's ruling which had not accorded to the Magnolia company an equal opportunity with the surrounding lessees to recover its fair share of the recoverable oil lying beneath the surface. To the same effect and with a similar result is *Marrs* v. *Railroad Commission,* 142 Tex. 293 [177 S.W.2d 941].)

In *Marrs* v. *City of Oxford,* 32 F.2d 134, 67 A.L.R. 1336 (Cert. den. 280 U.S. 573 [50 S.Ct. 29, 74 L.Ed. 625]), a city ordinance regulating the spacing and drilling of oil wells within the corporate limits was upheld on the ground that the regulations indicated every effort to protect, rather than to destroy, private rights by extending like opportunity to

all who had an interest, thus eliminating the race among those having rights in a common source of wealth.

The decisions approving the regulatory legislation invólved in the cases of *People* v. *Associated Oil Co., supra* (212 Cal. 76, 81) and *Bandini Petroleum Co.* v. *Superior Court, supra* (110 Cal.App. 123, 134), were based in part upon the legislative recognition and preservation of the correlative rights of the surface owners, and the necessity of one landowner to make productive use of his parcel in view of the equal right of the adjoining owners not to be deprived of correlative production from their parcels.

Statutory regulations dealing with the location and spacing of wells including provisions for pooling and proration of interests, enacted in oil producing states such as Texas, Oklahoma, New Mexico, Arkansas, Louisiana, Michigan, Illinois, Georgia and Mississippi, have been supported as constitutional because of the equal treatment of the rights of the surface owners in the common source of supply, or because they contained provisions looking to the prevention of hardship upon owners in particular cases. (See Summers, Oil and Gas, perm. ed., vol. 1, pp. 187 et seq., and numerous statutes and cases cited.) Such statutes do not violate either federal or state Constitutions. (*Champlin Refining Co.* v. *Corporation Com.*, 286 U.S. 210 [52 S.Ct. 559, 76 L.Ed. 1062] ; *Patterson* v. *Stanolind Oil & Gas Co.*, 182 Okla. 155 [77 P.2d 83].)

In the absence of statutory prohibition, the right to drill an offset well was commonly resorted to as a means of protection by an owner whose property was being drained by a well drilled on adjoining land. The wasteful use of offset wells was recognized as one of the evils sought to be minimized by the enactment of well spacing regulations. (*Croxton* v. *State*, 186 Okla. 249 [97 P.2d 11, 19] ; *Brown* v. *Humble Oil & Refining Co.*, 126 Tex. 296 [83 S.W.2d 935, 87 S.W.2d 1069].) But since the mere opportunity for voluntary pooling of interests does not afford equal protection within the meaning of the federal and state Constitutions, regulatory provisions which in effect prohibit the drilling of offset wells may amount to a denial of the equal protection of the law and a taking of private property without due process of law. Equal protection is so denied where, as here, the law, in its application at least, does not afford adequate means of protection as a substitute for the right to drill an offset well.

From the foregoing it follows that the respondent's disapproval of the petitioners' proposal to drill a well in accordance with the notice of intention on file, if effective to prevent such drilling, would amount to a deprivation of the petitioners' right, coequal with the right of surrounding owners and lessees, to recover their fair share of the oil and gas from the common source of supply, and consequently would infringe upon the constitutional guaranties invoked. We conclude that the spacing provisions of the Public Resources Code are inapplicable to prevent the drilling of a well by the petitioners. Insofar as the decision in *Larson* v. *Bush, supra* (29 Cal.App.2d 43), is contrary to this conclusion, it is disapproved.

The result is that the petitioners have the right to drill the proposed well under their community lease upon compliance with the code provisions insofar as they are otherwise applicable. But it does not follow that the peremptory writ of mandate should issue. There is no provision in the Public Resources Code which requires the respondent to issue a permit, nor is there any provision which requires the petitioners to obtain a permit before commencing the drilling of the proposed well. There is therefore no authority under the circumstances here presented for the issuance of the writ of mandate. (*Dormax Oil Co.* v. *Bush,* 42 Cal.App.2d 243 [108 P.2d 710].)

The alternative writ is discharged and the peremptory writ is denied.

Edmonds, J., Carter, J., and Schauer, J., concurred.

GIBSON, C. J., TRAYNOR, J., and SPENCE, J.—We concur in the judgment, but we cannot agree that a sufficient showing has been made that the legislation in question is unconstitutional as to petitioners.