[Civ. No. 22457.   Second Dist., Div. Three.   Feb. 17, 1958.]

C. E. BRALY et al., Respondents, v. BOARD OF FIRE COMMISSIONERS OF THE CITY OF LOS ANGELES et al., Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and Claude E. Hilker, Deputy City Attorney, for Appellants.

Kenneth A. Davis and John F. McCarthy for Respondents.

PATROSSO, J. pro tem.*—This is an appeal from a judgment ordering the issuance of a writ of mandate directing the defendant Board of Fire Commissioners of the City of Los

---

*Assigned by Chairman of Judicial Council.

Angeles to issue a permit for the drilling of an oil well upon property of the petitioners.

There is no dispute as to the facts. Petitioners Richley are the owners of a parcel of real property situate in the Wilmington oil field in the city of Los Angeles subject to an oil and gas lease executed by them to their copetitioners. The subject property is bounded on the north, east and west by public streets and on the south by a parcel of property owned by the city of Los Angeles. The area of petitioners' property is 25,762.6 square feet or approximately 59/100 of an acre. In addition the Richleys also own the underlying fee to one-half of the adjacent streets totaling 17,898.6 square feet or a total, including one-half of the adjacent streets, of 43,661.2 square feet or slightly in excess of one acre. To the north, northwest and east of the petitioners' property, but separated therefrom by intervening streets, there are located five wells producing oil, gas and other hydrocarbons from the same geological oil structure as that underlying the land of the petitioners, and three of which wells are admittedly draining oil and gas and other hydrocarbons from beneath petitioners' property.

Petitioners filed with the defendant board of fire commissioners an application for a permit to drill, maintain and operate an oil well upon their property at a proposed location thereon approximately 65.76 feet from the sidewalk portion of an adjacent public street, and 74 feet from the actual roadway portion thereof. This application, although otherwise in the form prescribed, was denied by the board for the stated reasons that (1) petitioners' land contained less than one acre of contiguous land exclusive of abutting or adjoining streets, alleys or sidewalks, and (2) the site of the proposed well was only 74 feet from an adjacent street contrary to various provisions of the Municipal Code of the City of Los Angeles. These, insofar as material, provide in part as follows:

Section 57.55 (B) (1). "No oil well shall be drilled within 75 feet of any public street or highway, or within 50 feet of the outer boundary of any operating unit. . . ."

Section 57.55 (E). "Every operating unit shall consist of at least one net acre of contiguous land. Parcels of land interrupted by or intersected by a public street shall not be deemed to be contiguous parcels of land; . . ."

Section 57.55 (O). ". . . no permit shall be issued by any board . . . authorizing the drilling . . . of any oil well . . . unless the applicant . . . has available for a drilling site at least one net acre of contiguous ground. . . .

"In computing the area of an acre drilling site, no part of the acre falling within any abutting or adjoining street, alley or sidewalk shall be included; . . ."

Section 57.55 (P). "No permit authorizing the drilling for oil, or the location or construction of any derrick to be used for the purpose of drilling for oil or other hydrocarbon substances, shall be issued if the granting of such permit would cause a parcel of property of less than one (1) acre contiguous to the property involved in the application for permit to be isolated so that such isolated property could not join with other contiguous property and become part of a drilling site of at least one (1) acre of ground, except upon condition that the permittee, his successors and assigns pay in money or kind to the owner of such isolated parcel a share of that proportion of all oil, gas or other hydrocarbon substances produced and saved from the well that the area of such isolated parcel bears to the whole area of the property described in the application, plus such isolated parcel; . . ."

Petitioners' property is so situate that it is impossible to drill a well thereon at a point distant 75 feet from any public street and which is also 50 feet or more from its outer bound- ▮▮▮ ▮▮ It is petitioners' contention, sustained by the trial court, that, under the circumstances and as applied to petitioners, the provisions of the municipal code hereinabove referred to, insofar as they prohibit the drilling of an oil well upon their property, are unconstitutional, and constitute the taking of property without due process. The correctness of this determination is the sole question presented upon this appeal.

A similar question was presented in *Bernstein* v. *Bush* (1947), 29 Cal.2d 773 [177 P.2d 913]. There the Supreme Court had occasion to consider the constitutionality of section 3600 of the Public Resources Code, declaring any well to be a public nuisance thereafter drilled for oil or gas which was located within 100 feet of the outer boundary of the parcel of land (which might comprise several contiguous parcels operated as one lease) on which the well was situated, or within 100 feet of a public street or highway dedicated prior to the commencement of drilling, or within 150 feet of a well being drilled or theretofore drilled and which was producing or capable of producing oil or gas. There the petitioners owned drilling rights on six small isolated and noncontiguous parcels of land each containing less than an acre, but altogether aggregating an acre or more. Each parcel was surrounded

by land owned by others and the oil beneath petitioners' land was being drained off by neighboring wells. Petitioners' application for a permit to drill was denied for the reason that, although the parcels involved in the lease comprised an acre or more, they were noncontiguous and a well drilled on any one of them would constitute a public nuisance within the meaning of section 3600. In holding that the statute as applied to the petitioners was unconstitutional, the court said:

"Here then we are more directly concerned with the contention of the petitioners that in its application to them the statute is discriminatory and therefore unconstitutional. They assert that such discrimination results from the fact that the enforcement of the regulations permits some owners of lands overlying the oil basin to exercise and enjoy their property right to take oil from the field, while the petitioners, who are property owners overlying the same oil supply, are deprived of the use and enjoyment of their coequal right. The mere assertion of the problem suggests the answer.

■ "Under the law of this state the landowner has a property right in oil and gas beneath the surface, not in the nature of an absolute title to the oil and gas in place, but as an exclusive right to drill upon his property for these substances. His unqualified and absolute title attaches after the substances have been reduced to possession. (*Tanner* v. *Title Ins. & Trust Co.*, 20 Cal.2d 814, 819 [129 P.2d 383]; *Bandini Petroleum Co.* v. *Superior Court, supra,* 110 Cal.App. 123, 127 [293 P. 899].) ■ This is a right which is 'as much entitled to protection as the property itself, and the undue restriction of the use thereof is as much a taking "for constitutional purposes as appropriating or destroying it"' (*People* v. *Associated Oil Co., supra,* 211 Cal. at pp. 99-100 [297 P. 536], and cases cited.)"

And after reviewing the authorities from other jurisdictions the court continued:

"In the absence of statutory prohibition, the right to drill an offset well was commonly resorted to as a means of protection by an owner whose property was being drained by a well drilled on adjoining land. The wasteful use of offset wells was recognized as one of the evils sought to be minimized by the enactment of well spacing regulations. (*Croxton* v. *State*, 186 Okla. 249 [97 P.2d 11, 19]; *Brown* v. *Humble Oil & Refining Co.*, 126 Tex. 296 [83 S.W.2d 935, 87 S.W.2d 1069].) But since the mere opportunity for voluntary pooling of interests does not afford equal protection within the meaning of the

federal and state Constitutions, regulatory provisions which in effect prohibit the drilling of offset wells may amount to a denial of the equal protection of the law and a taking of private property without due process of law. Equal protection is so denied where, as here, the law, in its application at least, does not afford adequate means of protection as a substitute for the right to drill an offset well.''

Following this decision, and probably as a result thereof, the Legislature in 1947 added section 3608 to the Public Resources Code, which in substance provides that where land aggregating less than one acre is surrounded by other lands, which other lands are subject to an oil and gas lease aggregating one acre or more, the owner or lessee of said surrounding lands, as a condition to obtaining a permit to drill, must share his production with the owner of the isolated parcel containing less than an acre.

Subsequently in *Hunter* v. *Justice's Court* (1950), 36 Cal. 2d 315 [223 P.2d 465], the Supreme Court had occasion to again consider the validity of section 3600 of the Public Resources Code in the light of this amendment. There the petitioner was an owner of two town lots containing less than an acre and all of the property surrounding petitioner's lots was leased to the Shell Oil Company which was engaged in extracting oil therefrom. Before proceeding with the drilling and production of oil from this area, the company filed, pursuant to section 3608 of the Public Resources Code, with the State Oil Supervisor, a notice of intention to drill under its lease and the supervisor filed a declaration that petitioner's lots were deemed included in the company's lease. As a consequence petitioner's lands were effectively pooled with the Shell lease and he was thereby entitled to receive his pro-rata share of the production from the Shell leases. The Supreme Court concluded that, in the situation there presented, section 3600 of the Public Resources Code when read in connection with section 3608 afforded petitioner an adequate substitute for his right to extract oil from his own property and upheld the constitutionality of the enactment.

In reliance upon this case, appellants contend that section 57.55(P) of the municipal code, hereinbefore quoted at length, affords the same protection to the respondents as did section 3608 of the Public Resources Code to the petitioner in the Hunter case. Whether this is so is the crucial question presented.

Before turning our attention to the provisions of the

municipal code in question, it should, however, be pointed out that section 3608 of the Public Resources Code has no application to the respondents by reason of the fact that it applies only to a parcel of land with an area of less than an acre. Unlike the municipal code, the statute does not exclude the area beneath streets in computing acreage requirements, and as the respondents admittedly own more than an acre, including the part subject to street easements, they do not come within the purview of section 3608.

Returning to the provisions of section 57.55 (P) of the municipal code, we find that it differs materially in its provisions from those of section 3608 of the Public Resources Code. Unlike section 3608, it applies to all owners and lessees of a parcel of property containing less than one acre without regard to whether the surrounding lands are subject to an oil and gas lease to which he, under the state law, in effect becomes a party when an application to drill an oil well on the surrounding land is filed. Under the municipal code, one owning a parcel containing less than one acre may not drill a well thereon so long as the owners or lessees of land contiguous to his do not undertake to drill despite the fact that oil underlying his property is being drained by wells on other lands not contiguous to his own, which is the situation in which respondents find themselves.

The wells which are draining respondent's property are located upon lands which are separated from their own by intervening streets. As a consequence they are not "contiguous" thereto as required by section 57.55 (P) because by the provisions of section 57.55 (E) these streets interrupt contiguity. As a consequence the municipal code does not operate to compel the owners or operators of such wells to include respondents' property with theirs and pay them their pro-rata share of the oil recovered. The only property contiguous to the respondents' is that located to the south thereof which is owned by the city of Los Angeles and upon which no oil wells are located. The only possibility of respondents receiving any benefit from the oil underlying their property is that at some time in the indefinite future the city of Los Angeles may drill for oil upon its property or lease the same to others for this purpose. By that time the quantity of oil underlying respondents' property will have been greatly diminished or possibly even exhausted. Nothing in the decision in *Hunter* v. *Justice's Court, supra,* suggests that in such a situation it may reasonably be said that the Municipal Code affords respond-

ents an adequate means of protection or substitute for their right to extract oil from their property. Indeed, the language of the opinion indicates the contrary for at page 321 it is said:

"Petitioner advances arguments that are not applicable to the statute *as applied to him here* such as: *That an owner of a below minimum parcel of property cannot drill until his neighbors or their lessees choose to drill, thus postponing realization by him of the oil produced from his property; that under section 3608 an owner of such property cannot receive anything from wells drilled on adjoining land unless he is 'surrounded' by land under an oil lease or leases:* . . . Those are all suppositious cases with which we are not presently concerned. Petitioner alleges that Shell Oil Company has a lease upon land 'adjacent' to or in 'proximity' with his property, and it appears from the company's return to the petition herein that it has a 'community' lease on all the lands surrounding petitioner's property and there appears to be no dispute about it. . . . The wells drilled under the lease are producing as in *Bernstein* v. *Bush, supra,* and we here decide that section 3608 is not invalid as applied to petitioner *under the circumstances presented.* We said in that case (p. 777) : 'The face of the legislation may appear to be valid, and insofar as it can be complied with and applied without a denial of constitutional rights it will be held to be proper and lawful legislation. But a statute, innocuous and valid on its face, may become invalid in its application, in which event it is proper for the petitioner to show the facts by which he contends that as to him the law is unreasonable, oppressive and void. (*In re Smith,* 143 Cal. 368, 370 [77 P. 180].) . . . In *Skalko* v. *City of Sunnyvale,* 14 Cal.2d 213, 216 [93 P.2d 93], this court recognized that a police regulation, valid when adopted, might become invalid in its operation in particular instances. The same principle was stated in *Bandini Petroleum Co.* v. *Superior Court,* 284 U.S. 8, 22 [52 S.Ct. 103, 76 L.Ed. 136, 78 A.L.R. 826], where the Supreme Court upheld a California statute regulating the exercise of the correlative rights of surface owners with respect to a common source of supply of oil and gas as "valid upon its face, that is, considered apart from any attempted application of it in administration which might violate constitutional rights." '

"*Moreover, there is a valid distinction between small acreage surrounded by leased property and that which is not, for in the former there is a development of the field and the small*

*owner may be placed under such development, . . ."* [Emphasis added.]

From the foregoing we believe it apparent that section 57.55 (P) of the municipal code affords the respondents no adequate means of protection or substitute for their right to extract oil from the property, and therefore section 57.55 (B) (1) which undertakes to prohibit the drilling of a well thereon falls within the condemnation of the decision in *Bernstein* v. *Bush, supra.*

■ Nor is there any merit in appellant's assertion that it was incumbent upon respondents, as a condition to receiving the relief granted them, to prove their inability to join with the contiguous land of the city of Los Angeles. Manifestly the respondents cannot compel the city to drill for oil upon its property or to lease the same for that purpose and, insofar as the municipal code is concerned, until the city does so, respondents must suffer the oil and gas underlying their property to continue to be drained off by wells upon other lands. Moreover if the city of Los Angeles were willing to join its property with that of respondents under an oil and gas lease, this would not dictate a different result for, as said in *Bernstein* v. *Bush, supra,* "the mere opportunity for voluntary pooling of interests does not afford equal protection within the meaning of the federal and state Constitutions."

■ Appellants further contend that in any event an oil well located as proposed by respondents would constitute a violation of section 3600 of the Public Resources Code which, as previously noted, prohibits the location of a well within 100 feet of the outer boundary of the parcel of land on which the well is situated or within 100 feet of a public street. This section however, was held to be unconstitutional in *Bernstein* v. *Bush* in a situation similar to that here presented absent a statutory provision affording adequate means of protection or a substitute for the right to drill an offset well. As we have seen, section 3608 later added to the Public Resources Code with the view of affording such protection, is without application to the respondents' property. Thus in these circumstances the validity of section 3600 insofar as it affects respondents, is to be determined as though section 3608 had never been enacted, and without the protection of section 3608 it must be held that, under the decision in *Bernstein* v. *Bush,* section 3600 is invalid.

Before concluding we feel it necessary to direct attention to the fact that neither party has undertaken to challenge

the validity of the provisions of the Los Angeles Municipal Code hereinabove discussed insofar as they undertake to prescribe less restrictive or different conditions with respect to the drilling of oil wells than those prescribed by the state law and consequently we have not considered this question. Nothing herein said therefore is to be construed as implying an expression of any opinion with respect thereto.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied March 5, 1958, and appellants' petition for a hearing by the Supreme Court was denied April 16, 1958.