[Sac. No. 4019. Department One.—August 8, 1928.]

ELLA FERAUT, Appellant, v. CITY OF SACRAMENTO (a Municipal Corporation) et al., Respondents.

Hughes, Bradford, Cross & Prior and Bradford, Cross & Prior for Appellant.

R. L. Shinn for Respondent.

CURTIS, J.—Action against the City of Sacramento and its officers by a property owner of said City to enjoin the enforcement of a zoning ordinance enacted by the city council of said City. A general demurrer to plaintiff's complaint was sustained by the trial court, and upon her refusal to amend said complaint the court entered its judgment in favor of defendants. From this judgment plaintiff has appealed. The facts recited herein are those set out in the complaint. The City of Sacramento on April 19, 1923, passed a general zoning ordinance, in which the territory within its limits was divided into five separate dis-

tricts, therein designated as first residential, second residential, commercial, light industrial and heavy industrial. It was further provided in said ordinance that no land or buildings in the commercial district should be used for any other purpose than for stores and other commercial purposes specifically named therein, and that all land and buildings in the second residential district should be restricted to family dwellings, apartment houses, hotels, and other noncommercial purposes, except that in hotels or apartment houses containing a certain number of rooms or apartments twenty-five per cent of the lot area might be devoted to retail business generally carried on in such buildings. Under the terms of said ordinance plaintiff's said land was included in the second residential district. Plaintiff desired to erect a building upon her said land, to be used as a store, and made application therefor upon blanks provided for that purpose by the building inspector. She was informed by the building inspector that by reason of said ordinance she was prohibited from erecting a store building on her said lot, as the same was located in the second residential district, and her said application was denied. The building inspector informed plaintiff that if she attempted to erect such a building upon her said lot without such a permit she would be prosecuted by the municipal authorities for the violation of said zoning ordinance. Thereupon plaintiff instituted this action. The ordinance referred to is set out in full in the complaint and as a part thereof is a map of the City of Sacramento, on which are delineated the respective zoning districts into which said City is divided, and the location of plaintiff's said lot in said City. Plaintiff's lot is situated on the south side of J Street, which is one of the main thoroughfares of said City and one of the two main arteries from Sacramento to Fair Oak, Folsom, and other communities lying easterly of said City. This map shows plaintiff's said lot to be located in a large residential district extending on either side of said J Street. None of the property along. J Street within 2,000 feet of plaintiff's property on either side of said street is located within other than a residential district except two contiguous blocks on the north side of said street, one of which blocks is immediately opposite plaintiff's property. That portion of said two

blocks facing on J Street, with a depth of 100 feet or more, is zoned as business property. Upon that portion of these two blocks zoned as business property, and within 250 feet of plaintiff's lot, there is located a gas station, grocery store, drugstore, butcher-shop, hardware store, dry-goods store, a delicatessen, "and what is now or formerly was a sanitorium." It appears from the complaint, we think, that this commercial district opposite plaintiff's property was in existence at the time of the adoption of the ordinance. Plaintiff has alleged a number of reasons, some of which rest upon pleaded facts, others upon mere legal conclusions, why said ordinance is invalid, and her first contention is that she should be permitted to prove these allegations of her complaint, and thus show the invalidity of the ordinance in the respects wherein its validity is questioned, and that without such an opportunity she is deprived of her substantial rights. This would be true only in case the facts so pleaded are sufficient to show the invalidity of said ordinance. If the facts so alleged are not sufficient for that purpose, then plaintiff's complaint fails to state a cause of action, and the general demurrer was properly sustained.

■ Plaintiff asserts that her complaint was drawn to plead a situation analogous to those considered in *In re Application of Throop,* 169 Cal. 93 [145 Pac. 1029], *Curtis* v. *City of Los Angeles,* 172 Cal. 230 [156 Pac. 462], and *Pacific Palisades Assn.* v. *Huntington Beach,* 196 Cal. 211 [40 A. L. R. 782, 237 Pac. 538]. The first of these cases involved the validity of an ordinance of the city of South Pasadena, dividing said city into districts or zones, and providing that a stone crusher should not be operated in district number 3, while the same might be carried on in district number 2. This court held that "An ordinance which prevents the operation of a stone crusher in a sparsely settled territory of 2163 acres, five hundred of which are undeveloped and practically uninhabited, and allows its operation in a small area of 11.65 acres in the center of a city, surrounded by 'poorer classes of residences,' does not subserve the ends for which the police power exists. In *Curtis* v. *City of Los Angeles, supra,* the validity of a city ordinance was involved which prohibited the establishment of a livery-stable in a certain district of the city. It was held that the ordinance, in that it absolutely prohibited the

maintenance of stables within a small district of the City which was comparatively sparsely settled, while permitting their maintenance in other districts more thickly populated and densely settled, and as exclusively devoted to residence purposes as was the sparsely settled district, was oppressive, discriminatory and void. In the case of *Pacific Palisades Assn.* v. *Huntington Beach, supra,* a general demurrer was sustained to the plaintiff's complaint, and this court, after reviewing the decisions of this and other jurisdictions upon the question of a municipality's power to regulate by ordinance an enterprise of that character within said municipality, held that "It is apparent from the averments of the complaint that appellant has attempted to plead a situation analogous to those considered in the two decisions of this court last cited. (*In re Application of Throop* and *Curtis* v. *City of Los Angeles.*) It has been fairly successful, and presents a case in which a property owner is prohibited by the municipality from installing machinery and operating an oil well on its property, while in other districts of the city, more thickly populated and densely settled, and devoted to residence purposes, the conduct of like operations is permitted. For these reasons appellant should be accorded the opportunity to establish, if it can, the unreasonableness and discriminatory character of the ordinance, which it alleges amounts to an unwarranted and arbitrary interference with its constitutional rights."

It is alleged in the complaint in the present action "That said zoning ordinance is not uniform in its operation in this: That it prevents plaintiff from using her said real property for business and commercial purposes and prevents her from using it for any other purpose than limited residence purposes, while it permits other persons, firms and corporations to use for business and commercial purposes property owned or rented by them in other districts more thickly populated and densely settled and exclusively devoted to residence purposes." This allegation, plaintiff contends, contains a statement of sufficient facts which, if true, entitled her to the relief prayed for. Her contention, then, is that the complaint shows that the ordinance, while it prohibits her from using her property for business purposes, permits business to be carried on in residential sections of the city which are more densely populated than the district in which

her property is located, and therefore the ordinance is not uniform in its operation and accordingly is illegal. We think none of the three cases cited by plaintiff, and above referred to, supports this contention of plaintiff. Each of these cases refers to some special and exceptional use to which property may be put, and they have but little application to the powers of municipal authorities to enact a general zoning ordinance. We do not understand that in dividing the territory of a city into industrial, business and residential districts that the authorities are controlled entirely by the density of population of these respective districts. There are other considerations which the city may well follow in determining whether certain territory within the city may be included in one or the other districts or zones. In one section of the city there may be railroad or water facilities which render such section naturally adapted to business purposes. Another section of the city, on account of its peculiar location, may be adapted to residential purposes. Can it be contended that simply because the latter section of the city is less thickly populated than the other, that the authorities are without power to set apart or zone the same for residential purposes? Yet this is at the most all the above-quoted allegation of the complaint shows in reference to plaintiff's property—that is, that it is located in a less populous district than other localities in said city where business is permitted. In *Zahn* v. *Board of Public Works,* 195 Cal. 497 [234 Pac. 388], much the same question arose. In that case the ordinance involved purported, among other things, to zone property along Wilshire Boulevard. By the ordinance one block on either side of La Brae Avenue, which intersected Wilshire Boulevard at right angles, was zoned as business property. The remainder of the property in the immediate vicinity of the intersection of those streets and facing on Wilshire Boulevard was zoned as residential property. This court sustained said ordinance, and after referring to the fact that one portion of the property along Wilshire Boulevard had been zoned as residential property while adjacent property at the intersection of La Brae Avenue and Wilshire Boulevard had been included in a business district, said (p. 512): "In this situation it may not be said that the ordinance is void for the reason that petitioners' property is zoned for

residential uses, whereas business structures are permitted in other localities within the city similarly circumstanced as the property of the petitioners.'' We are of the opinion, therefore, that the foregoing quoted allegation of the complaint fails to state any fact or facts which would tend to invalidate the ordinance.

 Under proper allegations the complaint shows that plaintiff's property is situated directly across the street from business property, as zoned by said ordinance. Plaintiff contends that in this respect the ordinance is illegal, in that it favors those who own property on the north side of the street at the expense of those property owners whose property is located on the south side of said street. There is no merit in this contention (*Zahn* v. *Board of Public Works, supra; Brown* v. *City of Los Angeles,* 183 Cal. 783 [192 Pac. 716]).

The further allegation is found in the complaint: ''That the property on the north side of J street between 38th and 39th streets, is, by the sole reason of its being classified as commercial property, greatly enhanced in value, and it exceeds in value the property on the south side of said street at least one hundred per cent; whereas, said property on the south side of J street, opposite said commercial property is by reason of its being opposite said commercial property, greatly reduced in value, and rendered practically undesirable as residence property.''

Plaintiff contends that the facts set forth in this allegation are sufficient to warrant the granting of the relief demanded by her complaint. A similar claim was made as to the ordinance considered in the case of *Zahn* v. *Board of Public Works, supra* (p. 512), but this court held the claim untenable in the following language: ''The fact that the inclusion of the petitioners' property in zone 'B' rather than in zone 'C' depreciates its value is not of controlling significance. Every exercise of the police power is apt to affect adversely the property interest of somebody. (*Spector* v. *Building Inspector of Milton* [250 Mass. 63], 145 N. E. 265, 267.)''

Plaintiff makes further contentions as to the invalidity of the ordinance, all of which we may assume are based upon proper and sufficient allegations of fact in her complaint.

These contentions will be considered in the order in which they are presented in her brief.

The first of these contentions is that the property of plaintiff is as a matter of fact commercial, notwithstanding the fiat of the city council. This is a matter largely in the discretion of the city council and courts are loath to substitute their judgment for that of the municipal authorities (*Miller* v. *Board of Public Works*, 195 Cal. 477 [38 A. L. R. 1479, 234 Pac. 381]; *Zahn* v. *Board of Public Works*, *supra*). There are no special allegations in the complaint to support this contention, except that plaintiff's property is situate opposite and across the street from property within a business district.

The contention that residential uses are forced to abut on business areas is conclusively answered in the Zahn case, as is also the further contention that a monoply is created in favor of business establishments which are situated across the street from plaintiff's property.

The further contention is made that plaintiff is not "pioneering" a commercial district in an exclusive residential district, but is seeking a store in a proven commercial district. The allegations of the complaint upon which plaintiff relies to support this contention are that her property is located opposite and across the street from property which is zoned for business uses. This presents the same question as was presented in the Zahn case where the petitioner's property, which was included in a residential district, was situated opposite and across the street from property zoned for business uses. There is no merit in this contention.

There are further claims made by plaintiff of the invalidity of the ordinance which we think find no support in the allegations of the complaint. The first of these is "that the property of plaintiff is in effect confiscated to an ultra-aesthetic idea." We think from what we have already said that it plainly appears that there has been no confiscation of plaintiff's property. That being so, the contention that the municipal authorities were actuated by ultra-aesthetic ideas in the enactment of the ordinance becomes of no moment.

Equally without merit is the contention "that said zoning ordinance is unequally administered to the practical

financial ruin of appellant.'' The complaint shows no damage to plaintiff or to her property, but what might legitimately follow from the proper and legal inclusion of her property in a zone or district different from that in which adjacent property is included (*Zahn* v. *Board of Public Works, supra,* p. 512; *Spector* v. *Building Inspector of Milton, supra*).

Finally, plaintiff contends ''that the system' in vogue in Sacramento is not a general, uniform and comprehensive one.'' As already noted, the complaint shows that by the ordinance in question the City of Sacramento was divided into five zones or districts. The ordinance includes the whole of the territory within the municipality. The Sacramento River bounds the City on the west and the Southern Pacific Railroad runs in a general easterly and westerly direction through the northern limits of the City. The Western Pacific Railroad runs parallel to, and some fifteen or sixteen blocks south of, the tracks of the Southern Pacific Company. The area along the river front and adjacent to the railroad tracks is included in industrial districts, both heavy and light. Between the lines of these two railroad companies, and extending from Second Street on the west to Twenty-first Street on the east and from E Street on the north to Q Street on the south, the territory therein is largely zoned as business property. East of Twenty-first Street to Thirty-first Street is included in the second residential district, except the property along J Street, which for a block on either side is zoned as business property, and except also a few small areas therein which are also zoned as business districts. East of Thirty-first Street to the City limits for about thirty blocks the territory of the City is mainly zoned for residential uses. There are a few small areas in this territory which are zoned as business property. Three of these face on J Street, one of which is located opposite plaintiff's property, another is located on the south side of J Street between Forty-eighth and Fifty-first Streets, and a third on the same side of the street between Fifty-sixth and Fifty-seventh Streets. There are other remote sections of the City, but it is not necessary to go into details regarding the manner in which they are zoned. Since the adoption of the general ordinance there have been a number of amendments thereto adopted by the

City whereby property originally located in a residential district has been rezoned as business property. None of these amendments, however, has affected plaintiff's property, nor so far as is shown in the complaint have they related to any property fronting on J Street or in the neighborhood of plaintiff's property. Plaintiff claims that by reason of these changes in the residential sections of the City, and the creating thereby of business districts therein, the residential sections of the City have become "spotted" and "that the system in vogue in said city is not a general, uniform and comprehensive one, but is a haphazard one." We think the general plan adopted by said ordinance for the zoning of said City, as briefly set forth above, cannot be criticised as lacking in those essentials which go to make up a general, uniform, and comprehensive system for the zoning of a modern city. The adoption of a proper system of zoning is largely in the power and discretion of the municipal authorities, and courts are loath to substitute their judgment for that of the duly constituted authorities of the city. "It is only when it is palpable that the measure in controversy has no real or substantial relation to the public health, safety, morals or general welfare that it will be nullified by the courts." (*Miller* v. *Board of Public Works, supra,* p. 490.) The only particular in which the complaint charges that the present system of zoning is not general, uniform, and comprehensive is that, by the original ordinance and subsequent amendments thereto, the City has permitted small areas scattered throughout the residential sections to be zoned for business uses, and thereby permitted or caused the residential districts to become "spotted." This practice we think is in almost universal operation. It was followed in the ordinance considered in the Zane case, and was expressly approved and commended by this court (p. 511).

We think we have considered and disposed of all the points made by the plaintiff in her assault upon the ordinance. In our opinion the complaint fails to state facts sufficient to entitle the plaintiff to a decree nullifying the ordinance. The general demurrer thereto was properly sustained. The judgment is accordingly affirmed.

Tyler, J., *pro tem.,* and Preston, J., concurred.