Hooley, J.
These two actions have been tried together because they involve similar questions.
In each action certain property owners in the village of Kings Point, Nassau County,. seek a declaratory judgment, among other things, that the zoning ordinance, of the Village of Kings Point as amended on March 24,1946, insofar as it provides that in A 2 and A Besidence Districts, no building shall be erected or altered to accommodate or make provision for more than one family for each 40,000 square feet or 20,000 square feet respectively of land, is void and ineffective and in violation of *487 the provisions of Amendment XIV of the Constitution of the United States and section 11 of article I of the Constitution of the State of New York and is, therefore, unconstitutional, invalid and void. In the two actions eleven parcels are involved. For convenience these parcels have been outlined in red on defendant’s Exhibit A and they will be hereafter referred to as parcels numbers 1 to 11 inclusive. Parcels numbers 1 to 6 inclusive are the parcels described in the six causes of action in the complaint entitled Meyer, et al. v. Village of Kings Point and parcels numbers 7 to 11 inclusive are the parcels described in the two causes of action in the complaint entitled Gignoux et al. v. Village of Kings Point.
By an amendment to the Building Zone Ordinance of the Village of Kings Point, adopted March 24, 1946, parcels 1 to 9 inclusive, which had theretofore been in A Eesidence District, which had a minimum dimension requirement of 20,000 square feet for each dwelling, were placed in A 2 Eesidence District which had a minimum dimension requirement of 40,000 square feet for each dwelling. Parcels 10 and 11, which had theretofore been in B Eesidence District which had a minimum dimension requirement of 10,000 square feet for each dwelling were placed in A Eesidence District which had a minimum dimension requirement of 20,000 square feet for each dwelling. ■ A plot of land containing 40,000 square feet is slightly less than an acre in area.
The village of Kings Point is the most northerly of a group of nine villages, most of which are small in area and population, in what is known as the Great Neck Peninsula extending from the north side of Long Island northerly into Long Island Sound, surrounded on three sides by water, Little Neck Bay on the west, Long Island Sound on the north and Manhasset Bay on the east. Kings Point has a population of a little more than 2,000. It has no stores or churches or schools within its corporate limits although a very small area is zoned for business and is, as yet, undeveloped. In various sections of the village there have been developments in which many more than ordinarily beautiful and expensive houses have been constructed. The village is unique in the sense that the governing authorities have endeavored to keep it strictly residential depending on adjacent villages for its business, school and church needs.
That a village may, if it so desires, limit its building construction to buildings of purely residential character was decided in the case of Matter of Fox Meadow Estates v. Culley (233 App. Div. 250, affd. 261 N. Y. 506) where the appellate courts sus *488 tained the zoning of the entire village of Scarsdale for one-family residences with the exception of two small sections near the railroad station where business uses and apartments had existed before adoption of the zoning ordinance. In the last-mentioned case, the Appellate Division said (pp. 251-252): <t There is no rule or standard found in other municipalities that may be inexorably applied to this village. It may adopt plans suitable to its own peculiar location and needs, acting reasonably.”
In Dilliard v. Village of North Hills (276 App. Div. 969) that entire village, with the exception of a small unused business district, was zoned for one-family residences with an added restriction requiring an area of two acres for each building plot. The court said in part: “ In the light of the location and character of the village, it was within defendant’s legislative province to determine, in the absence of proof of superior public need (Euclid v. Ambler Realty Co., 272 U. S. 365, 390), that the two-acre restriction is justifiable as an elastic application of police power (Simon v. Needham, 311 Mass. 560; Matter of Wulfsohn v. Burden, 241 N. Y. 288; Euclid v. Ambler Realty Co., supra, pp. 387, 388; Matter of Fox Meadow Estates, Inc. v. Culley, 233 App. Div. 250, 251); nor is the restriction invalid with respect to the particular parcel owned by plaintiffs.”
In Simon v. Town of Needham (311 Mass. 560) a by-law of the town, which is a suburb of Boston, which prescribed a minimum area of one acre for lots in a residential district was held valid. In that case, the court pointed out that in the four towns that adjoin Needham, the minimum area restrictions for a single dwelling had been fixed in one at 20,000 square feet; in two others at 40,000 square feet and in the fourth at an acre.
The case at bar was vigorously contested. The court had the benefit of the testimony of able experts on each side and the counsel on each side, to an unusual degree, afforded to the court a comprehensive view of the entire general situation in the village and vicinity. We are here dealing with a most unusual village. With no industry or business and not even schools or churches, it is apparent that the officials of Ibis village, from its incorporation, strove to make it available for residential purposes only, for those who desired the advantages of a community distinctly rural in character and for those who might desire the advantages of the quiet and beauty of rural surroundings.
Nassau County, once rural, is fast losing that distinctive characteristic owing to the great influx of population and the unprecedented construction of new homes. It is wholly understand *489 able that there, would lx1 people who would desire the establishment of a community of homes in which traffic congestion should lie at a minimum, adequate light, air and sunshine should be afforded, the danger from fire should lie at a minimum, peace and quiet would be enhanced, where life would be a relief from the densely populated areas adjacent to a great city and where the general enjoyment of life incident, to such an environment, would be promoted by zoning regulations tending to preserve and increase the beauty of the village in its distinctive setting and natural characteristics.
Of course, a zoning ordinance may not be used for the purpose of setting up barriers against the influx of persons who are able and willing to erect homes upon lots which are reasonably restricted. The question before the court is whether the zoning regulations here attacked are reasonable in their character and operation.
The purpose of zoning is two-fold. It should protect districts already established. It should control future development in a manner that is reasonable and for the best interests of the municipality in a comprehensive manner which would aid in the development of new areas.
The Village Law (§ 175) empowers a village to regulate, among other things, the density of population. The requirement of minimum lot areas per family is a well-recognized method of controlling population density.
A zoning ordinance is presumed to be valid. The burden is upon one assailing such an ordinance to overcome this presumption (Matter of Wulfsohn v. Burden, 241 N. Y. 288). If the question is fairly debatable, the court may not substitute its judgment for that of the local legislative body (Simon v. Town of Needham, supra; Euclid v. Ambler Realty Co., 272 U. S. 365, 388; Shepard v. Village of Skaneateles, 300 N. Y. 115).
As to the greater portion of the eleven parcels of land which are involved in these actions, the court has no difficulty in sustaining the zoning ordinance. As to parcels 1, 2, 3, 4, 5, 6, 7, 8, and 9, the zoning was unquestionably proper. Practically all of the village is now zoned as A 2 Eesidential with a requirement of 40,000 square feet on which a residence may be built. The court finds it to be a fact that there is a substantial demand in the village of Kings Point for single-family homes oh plots as large as 40,000 square feet. The only reason that the court would even question the zoning as to some of the parcels last mentioned would be the location in some of the parcels of low or swamp land, which, it is argued by plaintiffs, would not be *490 desired by an owner who was going to build in this highly restricted area. As to this low and swampy land, it is fair to assume that it would not be desired by prospective home builders even if it were zoned for smaller dimensions for each dwelling house. People would not care to build on low or swampy land. The best possible use for this low land would be in connection with its absorption into plots of larger dimensions.
The court finds that there is no confiscation in the zoning of the nine last-mentioned parcels. Zoning may sometimes inflict severe pecuniary damage on a land owner without it being confiscatory (Matter of Wulfsohn v. Burden, supra). But the record here convinces the court that no substantial damage by way of financial loss will be suffered by the plaintiffs by the zoning as to the nine parcels last mentioned.
Parcels 10 and 11 give the court more concern in the determination to be made herein. Portions thereof are on the boundary line separating the village of Great Neck from the village of Bungs Point: In the village of Great Neck, the houses on Bed-brook Boad across from' parcel 11 are by no means up to the standard expected on land zoned for 20,000 square feet for a single dwelling house.
The fact that the land on Bedbrook Boad in Great Neck is less restricted than that across the road in Bungs Point is not sufficient to justify the court in determining that the ordinance is arbitrary and confiscatory. A district has to end somewhere. In zoning, care must be taken to prevent a situation arising whereby, because across the street there is a lower class of development in another municipality, the undeveloped property in the first municipality is not brought down in a standard of development so that by a successive liberalization of the abutting properties, there may be a general disintegration of the entire plan of zoning. The fact that neighboring or adjoining-property is less restricted than plaintiffs’ does not establish arbitrary zoning or unfair discrimination.
The witness, Pomeroy, produced by defendant as an expert witness on planning and zoning pointed out as respects parcels 10 and 11 that to offset the bad effect on parcel 11 of houses across Bedbrook Boad, the parcel should be insulated against such bad effects by a landscape buffer of shrubbery, that there should be no lots fronting on Bedbrook Boad in the development of the parcel but a street should be run westerly, parallel with Bedbrook Boad from Middle Neck Boad. The witness, Pomeroy, testified that parcel 10 could be taken care of substantially in the same way by interior development thereof so that *491 houses built thereon should back up on the Village Line with a landscaped rear strip insulating it from the rear of the Hayden Avenue property. The testimony of the witness, Pomeroy, with his wide experience in zoning and planning, was most helpful to the court in arriving at a decision. The backlog of experience which he set forth gave to his testimony far more weight than that of the ordinary real estate expert.
The presence of some smaller lots in the A-2 Residence zone upon which dwellings have been erected does not invalidate the lot area requirements set forth in the ordinance.
The plaintiffs herein have not sustained the burden of showing that if the ordinance is enforced, the consequent restrictions on their property preclude its use for any purposes to which it is reasonably adapted (Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222).
The beauty of a residential neighborhood tends to the comfort and happiness of the people of a community. It tends to promote the general welfare, adds to the attractiveness of the community and living conditions therein and to the value of residential property therein located (Town of Lexington v. Govenar, 295 Mass. 31).
Real property located in a village does not have to conform in zoning restrictions with other villages. If the inhabitants of a village desire to make the real property therein available for residential purposes only, so that its beauty and rustic character may be preserved and increased and such zoning may be accomplished without arbitrary and confiscatory action, such a village should be sustained in its attempt to secure the village from noise and traffic, the danger from fire, a better opportunity for rest and relaxation and safety for children.
The court is not convinced that the action of the zoning-authorities was arbitrary or unreasonable. In fact, it finds just the opposite. The court is convinced that the zoning had a definite bearing upon the general welfare.
“ The power of a municipality to determine for itself what plans are necessary to promote the public health, morals, safety, and the welfare, convenience and general prosperity of its people is a legislative question, which may not be interfered with by the courts except in rare instances.” (Matter of Fox Meadows Estates v. Culley, 233 App. Div. 250, 251, supra.)
We are dealing here with a village surrounded by water on three sides, wooded in part and considerably developed with a high type of residential construction. There was an attempt by the zoning authorities not only to preserve the exclusive, *492 high class and rural aspects of the community but also to insure the further development of the land within the village along the lines of the present development.
There is no basis for any interference by the court with the ordinance in question. Judgment for defendant. No costs.