[Civ. No. 23766. Second Dist., Div. One. July 20, 1959.]

ELMER PATRICK FRIEL et al., Appellants, v. COUNTY OF LOS ANGELES et al., Respondents.

Elmer Patrick Friel, in pro. per., and Stanley & Kirby for Appellants.

Harold W. Kennedy, County Counsel, John H. Larson and Donald K. Byrne, Deputy County Counsel, for Respondents.

FOURT, J.—This is an appeal from a judgment wherein the court declared that certain provisions of the zoning ordinances of the county of Los Angeles, with reference to the drilling of oil wells were constitutional, reasonable, non-discriminating and not arbitrary, and that plaintiffs were not entitled to an injunction or any relief.

The appellants are the owners of, or claim the exclusive right to drill for oil in three noncontiguous parcels of land consisting of about one acre each, situated in a residential, unincorporated area of the county of Los Angeles, and which said area is zoned for residential purposes. Parcel one of the parcels in question is an area zoned R-2 (two-family residences), and parcels two and three are zoned R-1 (single-family residences). A strip of commercially zoned property exists within the over-all area in question, being generally along each side of Atlantic Boulevard, which traverses the residential properties. There are approximately 960 families

residing within the residentially zoned district in question. To the north of the residentially zoned district, the property is occupied by the Union Pacific Railroad yards, and that property is zoned as M-2 (manufacturing). Several oil wells have been drilled on the Union Pacific property, some of which are bottomed under the railroad property and some of which have been slant drilled and are bottomed under the residentially zoned property, but none of them are bottomed under the appellants' property.

The zoning ordinances were adopted and the area was zoned as is long before any oil was discovered.

The zoning ordinances permit the drilling of oil wells in industrially zoned areas, such as M-2, under certain restrictions and conditions, and prohibit the drilling of oil wells within the area zoned for residential purposes.

The appellants requested exceptions or variances from the regulations of the zoning ordinances prohibiting oil well drilling in residential areas as to parcels one and two. No exception or variance was requested as to parcel three. The regional planning commission refused to grant an exception upon the grounds, among others, that there were many protests against the application; that the Richfield (presumably Richfield Oil Corporation) would compensate all property owners for the oil extracted from beneath their property within the boundaries of Unit A; that although it appeared probable that there was oil under the parcels in question, it could be extracted and compensated for by Richfield, and that under the circumstances it would be *materially detrimental to the public welfare and to the property of other persons located in the vicinity of appellants' property.* That action was appealed to the board of supervisors, which board, after a public hearing, refused to grant the exceptions or variances requested.

The present action was then brought to restrain the respondents from enforcing the zoning ordinances, and to secure a declaration that the zoning ordinances as applied to the appellants were unconstitutional and arbitrary.

A pretrial stipulation was entered into, which in effect, among other things, set forth: that Friel is the owner of a certain community oil and gas lease, dated July 30, 1954, executed by plaintiffs as lessors and by Friel as lessee, and that as such he has the exclusive right to drill for oil from the three parcels; that the three parcels are zoned residentially and are a part of a much larger residential area; that

parcels two and three are near, and that parcel one adjoins a part of the right-of-way and yards of Union Pacific; that the entire general area in question is bounded on the north by the Union Pacific Railroad right-of-way, and on the south by the Sante Fe Railroad right-of-way, on the east by Eastern Avenue, and on the west by Long Beach Freeway; that such general area varies in width, north and south, from 4,800 feet at Eastern Avenue, to 3,500 feet at the Long Beach Freeway, and is about 4,000 feet wide from east to west; that the residential portion thereof is about 1,800 feet wide from north to south at the point where the plaintiffs' said parcels are located; that the parcels one, two and three and the residential area surrounding are located within a portion of an oil field commonly known as Bandini Field; that there are about 45 producing wells in the general area; that the total production from the field as reported by a state agency for January, 1957, was 74,781 barrels; that the lands in question are subject to zoning laws of the county of Los Angeles, the first of which was adopted in 1929, and amending ordinances adopted from time to time thereafter; that at all times prior to 1953, the Union Pacific yard was zoned M-2, and that parcel one was zoned R-2, and parcels two and three were zoned R-1; that at all times the ordinances have prohibited the operation of any oil and gas wells in either zone R-1 or R-2, even though such properties are being drained of oil and gas from neighboring property; that it was permissible to drill oil wells in zone M-2 under certain conditions; that the defendants have construed and administered the prohibitions of the zoning ordinance with respect to oil and gas as applying only to the surface location of said wells; that the Union Pacific Railroad Company has been permitted to use the portion of its yards lying more than 300 feet from R-2 zone property along the northerly side of the residential area in question for the purpose of drilling and operating oil wells and of slant drilling to any location desired by Union Pacific, without any restriction under the zoning ordinances; that prior to March, 1955, the Union Pacific entered into an oil and gas lease with Richfield Oil Corporation covering the Union Pacific yards, and also permitting Richfield to use the yards for surface locations for slant drilling and the operation of oil and gas wells; that during 1955 through 1957, Richfield slant drilled six oil wells from surface locations in said yards, and more than 300 feet from zone R-2, and completed the said wells within certain of the properties to the south thereof in zones

R-1 or R-2; that Richfield did not obtain any special use permit for such drilling; that other wells were drilled by Richfield for which no permits were secured; further, that the ordinances provided for exceptions which could be granted if it appeared probable that there was oil underneath the property under consideration, or under adjacent property, which oil could not otherwise be extracted, and that such exception would not be materially detrimental to the public welfare nor to the property of other persons located in the vicinity; that in December, 1955, certain of the plaintiffs filed two applications with the regional planning commission, each for an exception to drill and operate an oil well, one on and with respect to parcel one, and one on and with respect to parcel two; after hearing before the zoning board the commission denied the applications, although it was found that it was probable that there was oil under each of the two parcels; that plaintiffs appealed to the board of supervisors and that board confirmed the findings and recommendations of the planning commission denying the applications and denied the appeals, no application for an exception to drill has been made with reference to parcel number three; that at one time the county granted an exception to General Petroleum Corporation to drill an oil well on one of the lots in the residential area, which said well was slant drilled from the surface location into the subsurface of industrial land, zone M-2, and was not drilled to protect against drainage; that Richfield in 1955 was granted a special permit to establish and operate some production tanks and other units in the M-2 zone, and which tanks and units were within 100 feet of the dwelling houses in a part of the R-2 zone; that it is provided in one of the ordinances that to violate any provision of the ordinances shall constitute a crime, and that the defendants will, unless restrained, prevent the plaintiffs from drilling and operating oil and gas wells on their parcels one, two and three, and will arrest and prosecute any of the plaintiffs who undertake to drill such a well from the surface of parcels one, two and three. There was also filed a supplemental stipulation as to how the shares of production were divided between Richfield and Union Pacific.

The issues were stated, in effect to be: (1) Whether the complaint stated a cause of action; (2) as to parcel three, whether the plaintiffs had exhausted their administrative remedies; (3) whether oil wells could be constructed on parcels one, two or three, without material detriment to the

surrounding properties; (4) whether the effect of the county zoning ordinances is to tend to create a monopoly as to oil and gas production in the area in favor of Richfield and Union Pacific; (5) whether oil and gas is being drained from parcels one, two and three by Richfield; (6) whether the ordinance affords the plaintiffs an adequate substitute for the right denied them by said ordinance to drill offset wells on parcels one, two and three; (7) whether the ordinance is unconstitutional and void as being: (a) a denial to plaintiffs of due process; (b) a denial to plaintiffs of equal protection; (c) a taking of private property for public use without compensation; (d) a conferring of special privilege and immunity on Union Pacific and Richfield with respect to oil and gas underlying the area, while depriving the plaintiffs of their privileges with respect thereto.

The trial court, pursuant to a request and stipulation, viewed the area and made observations in all parts thereof. As heretofore indicated, judgment was in favor of the defendants.

The appellants rely mainly upon the language in the cases of *Bernstein* v. *Bush* (1947), 29 Cal.2d 773 [177 P.2d 913]; *Hunter* v. *Justice's Court* (1950), 36 Cal.2d 315 [223 P.2d 465]; *Bernstein* v. *Smutz* (1947), 83 Cal.App.2d 108 [188 P. 2d 48]; *Sindell* v. *Smutz* (1950), 100 Cal.App.2d 10 [222 P.2d 903]; *Braly* v. *Board of Fire Commissioners* (1958), 157 Cal. App.2d 608 [321 P.2d 504]; *Beverly Oil Co.* v. *City of Los Angeles* (1953), 40 Cal.2d 552 [254 P.2d 865]. We have read each of the cases so cited, and we believe that a thorough analysis of these cases will support the position of the respondents, and not that of the appellants.

The trial court, in this matter, prepared and filed a comprehensive memorandum of decision which, in our opinion, disposed of the appellants' contentions. ▮ The memorandum sets forth in part the following:

"(1) The allegation that the residential area constitutes an 'island' probably was provoked by language in *Wilkins* v. *City of San Bernardino*, 29 Cal.2d 332, 340 [175 P.2d 542], wherein the court classified zonings which have been held invalid, but the classification of an island used therein is not the situation herein, the language used was, '4. Where a small parcel is restricted and given less rights than the surrounding property, as where *a lot* in the center of a business or commercial district is limited to use for residential purposes, thereby creating an "island" in the middle of a larger area

devoted to other uses.' There is a substantial difference between the islands of which the court was speaking and the residential district herein, which is sixteen blocks long and over two double blocks wide and wherein over 960 families reside. Such a district is not within the island zoning cases. The district may be said to be an island only in the sense that nearly every residential zone has commercial or industrial zones on all sides at a greater or lesser distance.

■ "(2) The allegation that the residentially zoned property herein 'is so hedged in by industry that it does not have truly residential characteristics' is directly contrary to the fact as disclosed by the viewing. After examining the maps and photographs received, the court was surprised to find on the viewing that the district possessed residential characteristics to the degree it does. It is a district of well-kept medium value homes. It compares favorably with the scores of residential districts in the city of Los Angeles. Maintenance of homes and grounds is more uniform than of comparable value homes in many districts. Except while on Atlantic Boulevard, Strong Avenue or in the vicinity of Washington Boulevard, business and industrial uses are strikingly not visible, due to the level terrain. Even while travelling along Astor Avenue it was difficult to make out the railroad property which lies beyond the rear yards of the homes on the northerly side of the street. The derrick shown in several of the photographs . . . apparently has been removed, although a temporary rig was near the same location.

"(3) Plaintiffs introduced no evidence in support of the allegation that drilling and operation of oil and gas wells could be carried on upon the three parcels and at most other points without any material detriment to any of the sur-. rounding properties, residents or landowners. The viewing did not support this allegation, unless the statement could be made as to all residential districts, wherever situated.

"(4) No evidence was presented in support of the allegation that the operation of the railroads and industries cause greater detriment than would be caused by drilling and operating oil wells. . . . As to industrial plants on the south and southeastern boundaries, no noises were noted except those of an occasional truck entering or leaving a plant.

"(5) While it is generally true that more revenue is produced from the exploitation of oil than from the use of land for residences, plaintiffs introduced no evidence of the value

of any surface rights and the court cannot make appraisals by taking judicial notice of the value of improved lots.

■ "(6) Implications which might be drawn from the allegation that the county 'has established zoning for parcels 1, 2 and 3 and for the area surrounding them which permits the owner of the railroad yards to drain oil and gas' from beneath the three parcels while preventing offset drilling are not accurate. The legislative history and other stipulated facts show that the present zoning preceded by some years the first drilling for oil in the field.

"The situation is quite different from that in *Bernstein* v. *Smutz*, 83 Cal.App.2d 108 [188 P.2d 48], wherein it was held that the general demurrer should have been overruled and which involved an ordinance limiting wells to one per block, passed as an emergency measure while that plaintiff had an application pending for permission to drill a second well on his land, or the situation in *Sindell* v. *Smutz*, 100 Cal.App.2d 10 [222 P.2d 903], wherein the sequel ordinance limiting wells in a small area, 'less than one per cent of the total area of Wilmington City which is devoted to the production of oil,' to two wells per block ('The facts alleged in the Bernstein case differ from those in the case at bar only in this: In Bernstein, the ordinance limited drilling to one well in a block in a small part of the field; in the present case, the ordinance limits drilling to two wells in a block in the same small part of the field,' p. 19). Likewise in *Pacific Palisades Association* v. *City of Huntington Beach*, 196 Cal. 211 [237 P. 538, 40 A.L.R. 782] (a decision on a demurrer) the residential zoning was applied to that plaintiff's thirteen acres as an emergency measure after a lease to drill.

"The ordinance at bar also differs from the three ordinances involved in the foregoing cases in that it contains provisions for the granting of exceptions or variances termed special use permits.

"In the last analysis, the present case presents the question whether a county or municipality may prevent drilling for oil and gas in a residential zone. The question is categorically so stated because the character of the area restricted to residential usage is truly and exclusively residential when viewed by an objective viewer.

"Plaintiffs have cited no case holding that oil drilling cannot be prohibited in a residential zone and certain of their cited cases stated that it can be. The court's own research has disclosed no case invalidating such zoning.

"Plaintiffs have cited *Pacific Palisades Association* v. *City of Huntington Beach, supra*; as previously noted, it was at the demurrer level and involved an ordinance passed as an emergency measure after a lease to drill on plaintiff's thirteen acres. The court stated, '. . . the complaint . . . presents a case in which a property owner is prohibited by the municipality from installing machinery and operating an oil well on its property, *while in other districts of the city, more thickly populated and densely settled, and devoted to residence purposes,* the conduct of like operations is permitted. (Citations.) For these reasons, appellant should be accorded the opportunity to establish, if it can, the unreasonableness and discriminatory character of the ordinance . . . The outcome of the controversy will, of course, depend upon the findings of the trial court when the issues have been finally submitted and determined.' (Italics added.) Earlier the court had stated, 'The City of Huntington Beach has the unquestioned right to regulate the business of operating oil wells within its city limits, and to prohibit their operation within delineated areas and districts, if reason appears for so doing. (*Ex parte Hadacheck,* 165 Cal. 416 [132 P. 584, L.R.A. 1916B 1248] [aff. 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348].) . . . Every intendment is to be made in favor of the lawful exercise of municipal power making such regulations, and it is not the province of courts, except in clear cases, to interfere with the exercise of that authority.'

"*Bernstein* v. *Smutz, supra,* was also at the demurrer level. The complaint disclosed that a well had been drilled in the block, an application to drill a second well was pending, and the city enacted as an emergency measure an ordinance, applicable to less than one per cent of the oil field, which limited wells to one per block notwithstanding that nearly all of the 140 blocks in the area had two or more wells. As the court said, 'Whether only one well to a block in the area in question is reasonable is not something of which the courts may take judicial notice. The only way in which the validity of the ordinance can be determined is by a trial of the issues of fact tendered by the petition.'

"*Sindell* v. *Smutz,* 100 Cal.App.2d 10 [222 P.2d 903], cited by plaintiffs, was a decision after a trial. Therein, an ordinance was held unreasonable which prohibited more than two wells in a block (known as District 19) which already had two producing wells, a filling station, restaurant and garage, was 'largely unimproved,' and more than half of

which was commercially zoned. 'Immediately to the south across Highway 101 wells are producing on the basis of several wells to one block . . . Immediately to the east, in District 36, wells are permitted on the basis of one well to an acre, and in two other blocks on the basis of more than two wells to the block. There is no difference in the character of District 36 and the two other blocks and that of District 19.' The foregoing will suffice to point up the difference between the facts therein and herein. In the present case (1) there are not two wells, but none on the properties; (2) there are no wells on any other properties across the various streets on which the properties of plaintiffs abut; (3) the physical condition of the railroad yards in which the wells are located is not comparable to the residentially improved property of plaintiffs and the surrounding residential properties; and (4) there is a vast difference, in the realm of reasonableness, between an ordinance which seeks to prevent a third well in a block and one which prevents the invasion of the first.

"Plaintiffs have cited *Bernstein* v. *Bush,* 29 Cal.2d 773 [177 P.2d 913], which held the original state requirements as to spacing of wells to be invalid as to the plaintiff therein. The court stated, page 775: 'It is alleged that due to the leasing by General Petroleum Corporation of California of strategic acre parcels, certain single lots of less than one acre owned by the petitioners . . . have been isolated and cut off from participation in the leases and the royalties . . .' It should be noted that the court distinguished zoning regulations and spoke approvingly of residential zoning restrictions which prohibited drilling, saying at page 777, 'Instances where that was the necessary result of the legislation [damnum absque injuria] are numerous. *Zoning regulations are familiar examples. As applied to oil well operations an absolute and all-inclusive prohibition against the drilling for oil and gas in a specified district zoned as residential was deemed reasonable and constitutional. (Cromwell-Franklin Oil Co.* v. *Oklahoma City,* 14 F.Supp. 370.) A statute which forbids the drilling of a well within 100 feet of a railroad right of way was upheld as a constitutional exercise of the police power. (*Winkler* v. *Anderson,* 104 Kan.1 [177 P. 521, 3 A.L.R. 268].) The present legislation, however, is not in that category.' (Italics added.)

"Plaintiffs cited *Beverly Oil Co.* v. *City of Los Angeles,* 40 Cal.2d 552 [254 P.2d 865]. This case involved an ordi-

nance which prohibited the plaintiff from drilling any new wells on its property (this phase, it might be argued, might cast some doubt on the *Bernstein* v. *Smutz* and *Sindell* v. *Smutz* decisions) or redrilling any existing wells to greater depths. The court held, page 557, 'The plaintiff has argued in the present case that the ordinance is invalid because it takes away or impairs his vested right to reach any and all oil underlying his property. However, the very essence of the police power as differentiated from the power of eminent domain is that the deprivation of individual rights and property cannot prevent its operation, once it is shown that its exercise is proper and that the method of its exercise is reasonably within the meaning of due process of law.' (P. 558) 'And it is recognized that oil production is a business which must operate, if at all, where the resources are found. Nevertheless city zoning ordinances prohibiting the production of oil in designated areas have been held valid.'

"The court quoted the same language from Pacific Palisades Association quoted earlier herein and then continued, 'In *Marblehead Land Co.* v. *City of Los Angeles,* 47 F.2d 528 (cert. denied, 284 U.S. 634 [52 S.Ct. 18, 76 L.Ed. 540]), the Circuit Court of Appeals affirmed a judgment of the district court denying an injunction against the enforcement of the Los Angeles zoning ordinance in its prohibition of oil well drilling operations in an area zoned for other uses. The argument raised the question of the right of the property owner to extract natural resources. The court stated (p. 532) : '... there can be no question of the inherent right of the city to control or prohibit such production, provided it is done reasonably and not arbitrarily. In that event the loss must fall on the owner whether it prevents him from erecting structures or establishing industries which he desires to erect or establish, or whether it prevents him from developing potentialities of his land.' The court decided that the particular ordinance was not arbitrary or unreasonable, even though the city council had once amended the ordinance to permit oil drilling operations and had then repealed the amendment, while in the meantime the land had been leased for oil drilling purposes and a considerable sum of money had been spent in preliminary work.

" 'It must be deemed to be well settled that the enactment of an ordinance which limits the owner's property interest in oil bearing lands located within the city is not of

*itself an unreasonable means of accomplishing a legitimate objective* within the police power of the city.' (Italics added.)

 "In the case at bar plaintiffs have not shown facts comparable to those prima facie or held to be unreasonable in the cases cited. Each of the cited cases recognizes the power of the government to restrict an area to residential use and prohibit drilling for oil. If plaintiffs are entitled to invalidate the zoning herein, then no restriction against drilling is valid if it can be shown that oil and gas underlie the area.

"There is no difference between an ordinance which prohibits A, the owner of the surface in a residential zone from reducing to possession oil which cannot be reached by any other person and an ordinance which prohibits A, the owner of the surface in a residential zone from reducing to possession oil which can be reached by B through slant drilling from outside the residential zone. Plaintiffs are in no worse situation than the owners of residentially zoned property in Long Beach or parts of Los Angeles over admitted oil pools who cannot drill either. They may have better opportunities since they did give evidence that the Richfield Oil Company had approached them 'many times' to sign royalty contracts, but that fact does not influence the decision herein.

"The mere fact that the property north of the residential zone has long been zoned for industrial uses, in which zone anywhere in the county, drilling is permitted, does not invalidate the residential zoning. As was said in *Reynolds* v. *Barrett*, 12 Cal.2d 244 [83 P.2d 29], 'The line between business and residential property must be drawn somewhere. The mere fact that business property is located across the street or even adjoining the residential property involved does not determine that the ordinance is invalid or discriminatory. (*Smith* v. *Collison*, 119 Cal.App. 180 [6 P.2d 277] ; *Feraut* v. *Sacramento*, 204 Cal. 687 [269 P. 537].) . . . Damage to petitioner's property by reason of being in a residential zone adjoining business property in no way affects the validity of the ordinance. Damage caused by the proper exercise of the police power is merely one of the prices an individual must pay as a member of society.'

"At several points in the complaint and their points and authorities plaintiffs use the unpopular connotated word 'monopoly' and allege that restricting their properties to residential use creates a monopoly. The term also is used in some of the cases cited. The unpleasant connotations must

not be permitted to mislead. It might be asserted by the owner on the south side of a street that limiting that side to residential usage while the north side is zoned for commercial uses creates a monopoly in the hands of the owners on the north side, but the appellation is not sufficient to invalidate the residential zoning. The boundary line must be located somewhere and there will always be property just over the line. Further, before there could be said to be a monopoly created herein, there must be a similarity of properties and there is no similarity between the railroad yard herein and plaintiffs parcels 1, 2 or 3.

■ ''7. It is not apparent why it was alleged that the comprehensive zoning ordinance of the county did not require a special use permit to drill in an M-2 zone, was amended January 27, 1956, to require such a permit, shortly thereafter on May 20, 1956, was amended to remove the requirement; Richfield Oil Company drilled three of its wells in the railroad yard during that period without obtaining permits, but the county did not take steps to prosecute or enjoin it. Such matters are surplusage, for the failure to prosecute for a violation committed in the railroad yard does not render the residential zoning on plaintiffs' properties unreasonable or arbitrary. There is no bearing thereon at all.

■ ''8. It is alleged and stipulated that the county granted a special use permit to the General Petroleum Corporation in 1947 to drill a well on a lot in the southeasterly end of the residence zone across from a manufacturing zone. The complaint prays for a judgment that drilling be permitted on plaintiffs' properties upon the same terms and conditions prescribed by the county as to that well. Neither the complaint nor the evidence ever disclosed any of said terms or conditions, nor the subsequent history of the well. Whatever the conditions of the area may have been eleven years ago, the view by the court failed to disclose any evidence of a well in the triangle in which it is spotted in the exhibits. There are homes located there now and the court's efforts (short of trespass) disclosed no vestige of the well. However, the granting eleven years ago of one exception as to the usage of a lot does not render the continuance of residential zoning on some four hundred other lots unreasonable or arbitrary. What the condition of surrounding properties was eleven years ago is not before the court, but it is worthy of note that the lot is in a small triangle with streets on each side, whereas each of the parcels owned by plaintiffs is part of

a large block or blocks completely improved with the homes of others.

"9. Plaintiffs allege that the county 'further discriminated' against them by permitting the location of some tanks, separators and other equipment in the railroad yard adjacent to an R-2 zone when these things could have been located elsewhere in said yards. This equipment is close to parcel 1 but not to parcels 2 or 3, but the fact that it might have located elsewhere (although there is no evidence thereon) has no bearing on the reasonableness of the continuance of residential zoning of plaintiffs' properties. It does not follow that the county's action was a discrimination and this action does not involve a review of the administrative action in granting that permit.

"10. It is alleged that the Richfield Oil Company has combined some of its wells into one development unit and others into another. It was stipulated that as to production 'in the Union Pacific yards' (wells bottomed thereunder?) the shares are seven-twelfths to the railroad and five-twelfths to the oil company; that 'in Southside Unit A' the shares are, Union Pacific 41.35675%, Richfield 40.18942%. The remaining 18.45383% was not explained. It was stipulated that 'in Southside Unit 3' the shares were Union Pacific 41.51031%, Richfield 39.86981%. This leaves 18.61988% unexplained. It was pointed out in the argument that Richfield would get a larger share of the production in the yard than in Unit B (1.79684%) but neither the grouping in units nor the small percentage variation has any bearing upon the issue of validity of the county ordinance.

". . . . . . . . . . . .

"The declaration will be that the zoning ordinance is valid, does not violate any of the provisions of the Constitution or the constitution of California, is reasonable, not arbitrary, nondiscriminatory, and plaintiffs are not entitled to an injunction or any relief beyond the declaration"

Appellants' contention, reduced to the simplest of terms, is that if there is oil under their property, and it is being drained, that then they, as owners, must be permitted to drill irrespective of any zoning ordinance provision—or, that if oil underneath the plaintiffs' property cannot be captured from other locations, then the county need not permit any capture at all; but, that if the recovery of oil starts from off-site wells located within an M-2 zone, then the zoning regulations may not prohibit oil drilling on the property

overlying the oil pool, even though such property be zoned R-1 for residential purposes exclusively. If this theory be adopted then any zoning ordinance which prohibits the drilling of oil wells will be invalidated upon a showing that there is drainage from under, and a refusal to permit the drilling for oil in the prohibited area. We do not believe such to be the law in California.

There is no question that the county has the right to regulate the drilling and operation of oil wells within its limits and to prohibit their drilling and operation within particular districts if reasonably necessary for the protection of the public health, safety and general welfare. (See *Marble-head Land Co.* v. *City of Los Angeles* (1931), 47 F.2d 528; *Pacific Palisades Assn.* v. *City of Huntington Beach* (1925), 196 Cal. 211 [237 P. 538, 40 A.L.R. 782] ; *Wood* v. *City Planning Commission* (1955), 130 Cal.App.2d 356 [279 P.2d 95] ; *Beverly Oil Co.* v. *Los Angeles* (1953), *supra*, 40 Cal.2d 552.)

The mere fact that the residential area in this case is adjacent to a district which does permit oil well drilling, does not, in and of itself, constitute the ordinance a denial of equal protection of the laws, or not uniform in operation. (See *Zahn* v. *Board of Public Works*, 195 Cal. 497 [234 P. 388] ; *Feraut* v. *City of Sacramento*, 204 Cal. 687 [269 P. 537].)

The zoning ordinance is not confiscatory, arbitrary, oppressive, unreasonable or void as to the appellants. The mere fact, if it is a fact, that they suffer some money detriment, does not require that the ordinance be declared to be invalid. (See *McCarthy* v. *City of Manhattan Beach*, 41 Cal.2d 879 [264 P.2d 932] ; *City of Los Angeles* v. *Gage*, 127 Cal. App.2d 442 [274 P.2d 34] ; see also *Ulmer Park Realty Co.* v. *City of New York*, 297 N.Y. 788 [77 N.E.2d 797] ; *Gignoux* v. *Village of Kings Point*, 99 N.Y.S.2d 280.)

As to the drainage of oil from under the property of the appellants, we do not think that drainage is the controlling factor in zoning ordinances. The cases cited by appellants are not cases involving drainage in a residential zone, and appellants' main case, *Bernstein* v. *Bush, supra*, specifically recognizes the nonapplicability of such a ruling to a residential area.

Appellants further contend that the court committed reversible error in admitting testimony that Richfield had offered leases to the appellants, or in refusing to admit evidence that Richfield coerced the appellants. Suffice it to say

that the trial court stated in its memorandum of decision that such evidence was not controlling with him. Even if Richfield had attempted to coerce the appellants, how could that affect the validity or the constitutionality of the ordinances? The appellants and Richfield can each drill in an M-2 zone and neither can drill in an R-1 zone.

Admittedly the appellants neglected to ask for an exception or variance as to parcel three, thus they have made no pretense of exhausting their administrative remedies before seeking any judicial relief as to that particular parcel.

Judgment is affirmed.

White, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied August 14, 1959, and appellants' petition for a hearing by the Supreme Court was denied September 16, 1959. White, J., did not participate therein. Schauer, J., was of the opinion that the petition should be granted.