142 So.2d 321 (1962)
R.B. GAUTIER, Jr., and William R. Dawes, As Trustees, Appellants,
v.
TOWN OF JUPITER ISLAND, a Municipal Corporation, Appellee.
No. 2586.
District Court of Appeal of Florida. Second District.
June 15, 1962.
*322 Lee M. Worley, of Worley, Gautier & Dawes, Miami, for appellants.
Alley, Maass, Rogers & Lindsay, Palm Beach, and Anderson & Nadeau, Miami, for appellee.
SHANNON, Chief Judge.
The appellants, as plaintiffs in the court below, brought this suit in equity against the Town of Jupiter Island, a municipal corporation, for the purpose of attacking a zoning ordinance which restricted the property involved to single family dwellings. The chancellor dismissed their complaint and hence, this appeal.
In setting out the facts we shall quote from the chancellor's opinion:
"The Plaintiffs' land is 4,400 feet in length and constitutes all the land, for this distance, between the Atlantic Ocean and Hobe Sound. Only the north 630 feet lying east of highway number 707, upon which Plaintiffs wish to erect a multiple family apartment house or hotel, is involved in the litigation.
"The community has existed for over fifty years, but it was not until 1953 that it received a municipal charter. The Town is isolated geographically, being located entirely upon an island and it is not a suburban area of any city. Its boundaries extend for nine and one-half miles, north to south, and the width of the island (Town) varies from 425 feet to 2,575 feet. The Atlantic Ocean is on the east and it is separated from the mainland by Hobe Sound and the Intracoastal Waterway. Only one bridge connects the Town with the mainland and it is located somewhat north of the center of the Town; but another bridge, a mile or so south of the Town boundary, affords access to and from the mainland.
"The population is small compared with the land encompassed by the municipal boundaries with approximately two hundred homes having been constructed; some being very old.
* * * * * *
"* * * It is a tropical paradise, and in this area the community is fairly well developed and built up,  giving full consideration to the seclusive tendencises [sic] and desires of the inhabitants.
"The settlement originated over fifty years ago as a retreat for individuals who could afford to seek the quiet peaceful solitude and tranquility to be found on the island. Its character was thus impressed, and it remains so to this day.
"To strike down the ordinance would be tantamount to destroying the character of the Town.
"The community is unique  it is the one and only, different from all others, having no like or equal. It is unusual, extraordinary and rare. It was cut from one mold and its counterpart cannot be found elsewhere. Many people would consider it dead  but it is very much alive with genteel living, friendship and compatability. The Town doesn't want what many others have, but many others would be better off if they had more of what this Town has and wants to keep  seclusion, solitude and tranquility.
* * * * * *

*323 "Under the existing zoning regulations a comparatively small area is allowed for business and related purposes, and at present a large part of the business is occupied by a golf course.
* * * * * *
"The community was originally created with a singleness of purpose; the County zoning (when it was effective) followed through to preserve that purpose; and in turn, the Town Council has now added its strength. The Legislature, the County Commission and the Town Council have seen fit to extend the preservative features of the zoning regulations to include the Plaintiffs' land and the judicial role is tightly surrounded by these legislative enactments. The wisdom and judgment of the Court cannot be substituted therefor without a clear showing that the zoning restriction is clearly arbitrary and unreasonable, and this, the Court feels, has not been done to the extent required here."
The appellants urge that the regulation under attack here amounted to an arbitrary and unreasonable exercise of the police power by the governing body of the Town of Jupiter Island because the object sought to be accomplished by the zoning ordinance bears no relationship to the health, safety, morals or general welfare of the community as a whole. Before striking down a zoning ordinance for these reasons it must be shown that its provisions when applied to the property in question are clearly arbitrary and unreasonable and have no substantial relation to public health, safety, morals or general welfare. See, e.g., City of Miami Beach v. Silver, Fla. 1953, 67 So.2d 646. This is the protection necessary to secure to the owner of property his right of enjoyment thereof. Tollius v. City of Miami, Fla. 1957, 96 So.2d 122.
In the instant case, as in any litigation wherein such an attack is made on a zoning code enacted by a city council upon authorization by legislative grant, the burden of alleging and proving its invalidity rests upon the assailant thereof. This burden is a heavy one. City of Miami v. Wiesen, Fla. 1956, 86 So.2d 442. We are of the opinion that the burden was not sufficiently carried by the plaintiffs in the case at bar.
While we have been presented with excellent briefs on both sides of the question now before us, neither party has cited a Florida case involving a like fact situation and our research has failed to disclose such a case. However, in the case of Fox Meadow Estates v. Culley, 1931, 233 App.Div. 250, 252 N.Y.S. 178, the New York court had before it a nine year old zoning ordinance of the village of Scarsdale, the primary purpose of which was to preserve the residential character of the village. It was pointed out that the zoning plan carried out the desires of the citizenry and provided for foreseeable future development. In holding that the ordinance was neither unreasonable nor discriminatory, the appellate court noted that generally in cases such as this there is resulting loss to individuals where there is public benefit. This case was affirmed in 261 N.Y. 506, 185 N.E. 714.
Subsequently, in the case of Gignoux v. Village of Kings Point, 1950, 199 Misc. 485, 99 N.Y.S.2d 280, the plaintiffs sought a declaratory decree as to the validity of a zoning ordinance limiting the village to single family residences, with the exception of a very small area zoned for business. In upholding the validity of the municipal ordinance, the court set out the two-fold purpose of zoning, namely, that it should protect districts already established and also that it "should control future development in a manner that is reasonable and in the best interests of the municipality in a comprehensive manner which would aid in the development of new areas." The New York court further stated that if it is the desire of the inhabitants of a village to make the realty *324 therein available for residential purposes only, "so that its beauty and rustic character may be preserved and increased and such zoning may be accomplished without arbitrary and confiscatory action, such a village should be sustained in its attempt to secure the village from noise and traffic, the danger from fire, a better opportunity for rest and relaxation and safety for children." It was then held that the action of the zoning authority was neither unreasonable nor arbitrary.
In the instant case, we are concerned not with the size of the town so much as its unique status  one which has existed for many years. In the Supreme Court of New Jersey, in the case of Duffcon Concrete Products v. Borough of Cresskill, 1949, 1 N.J. 509, 64 A.2d 347, 9 A.L.R.2d 678, the question arose as to whether a municipality might exclude from its borders industrial enterprises. In upholding the ordinance, Chief Justice Vanderbilt, for the court, said:
"Sound social, economic and governmental policy dictates a separation, where possible, of residential areas and industrial areas. In the case of our older and fully developed communities, it is now too late to do more than preserve such beneficial features as may have survived the period of spontaneous and uncontrolled growth and by such costly measures as slum clearance and low-cost housing to attempt to rectify the unwholesome conditions caused by our earlier lack of foresight. Proper zoning today, however, can do much, in our newly developing communities to provide and to maintain safer and more healthy living conditions. And where, as here, there exists a small residential municipality the physical location and circumstances of which are such that it is best suited for continuing residential development and, separated therefrom but in the same geographical region, there is present a concentration of industry in an area peculiarly adapted to industrial development and sufficiently large to accomodate such development for years to come, the power of the municipality to restrict its territory to residential purposes with ample provision for such small businesses, trades and light industries as are needed to serve the residents, is clear. Cf. Hamlett v. Snedeker, 1945, 246 App.Div. 758, 283 N.Y.S. 906."
Later, in the case of Fanale v. Borough of Hasbrouck Heights, 1958, 26 N.J. 320, 139 A.2d 749, the New Jersey court had this to say:
"It cannot be said that every municipality must provide for every use somewhere within its borders. Duffcon Concrete Products, Inc. v. Borough of Cresskill, 1 N.J. 509, 64 A. 347, 9 A.L.R.2d 678 (1949); Pierro v. Baxendale, 20 N.J. 17, 118 A.2d 401 (1955). Whether a use may be wholly prohibited depends upon its compatability with the circumstances of the particular municipality, judged in the light of the standards for zoning set forth in R.S. 40:55-32, N.J.S.A.
"Apartment houses are not inherently benign. On the contrary, they present problems of congestion and may have a deleterious impact upon other uses. Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 394, 47 S.Ct. 114, 71 L.Ed. 303 (1926). * * * (Citing cases). And elsewhere it has been broadly said that circumstances may permit a municipality to zone for a single use to retain its residential character. * * * (Citing cases). No definitive pattern can be judicially prescribed; each case must turn upon its own facts."
The Supreme Court of Florida in the case of City of Miami Beach v. Ocean & Inland Co., 1941, 147 Fla. 480, 3 So.2d 364, had before it a case analogous to the present one in the application of principles of law. There the plaintiff had been successful in having the defendant city enjoined *325 from enforcing a zoning ordinance providing that in a certain area of the city, property could be used only for hotel and apartment sites. After stating the fundamental proposition that one may not be deprived of his property without due process of law, the court went on to say that one may be restricted in the use of his property when it is necessary to the common good. The court then stated that the question involved dealt only with the necessity of the restrictions to the general welfare of the inhabitants rather than the maintenance of health, safety and morals. In reversing the court below, Mr. Justice Thomas, for the court, also discussed the unique characteristics of Miami Beach and the aesthetic aspects necessary of consideration under the particular facts involved therein.
We note with interest the testimony of the town manager in the instant case, where he was speaking of the residents' reactions to the plaintiffs' request for a change in zoning:
"A. We received about  oh, maybe seventy-five letters or so, and I believe that one letter was received as being in favor of it, and I believe that letter was from Dr. Lunsford.
* * * * * *
"A.  there were about a hundred people present at the meeting and I don't  I have a list of the names present but I don't recall the actual people who were there, but I have in my files the different letters, maybe seventy-five letters written to us, in which I think about seventy-four were against it and about one was for it. I have those letters."
The record reflects that the land of Dr. Lunsford lay next to the land involved in this litigation. We are impressed by the city's argument that to permit the building of an apartment house or hotel would result in a breakdown of its entire zoning plan. In City of Miami Beach v. Ocean & Inland Co., supra, it is said:
"* * * Were this the case it would be but a matter of time before alterations of the whole scheme by successively liberalizing the use of abutting property would result in disintegration and disappearance of the whole plan of zoning."
It is evident to us that the same result would accrue from the change in the zoning regulation sought in the case now before us.
Where the particular regulation under consideration is a fairly debatable one, the action of the municipal authority in passing it should be upheld. When the question is fairly debatable the court does not have the right or the authority to substitute its judgment for that of the municipal legislative body charged with the power and duty of enacting zoning legislation. City of Miami Beach v. Wiesen, Fla. 1956, 86 So.2d 442. See also, Village of Euclid, Ohio v. Ambler Realty Co., 1926, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303; City of Miami Beach v. Hogan, Fla. 1953, 63 So.2d 493; and City of Miami Beach v. Ocean & Inland Co., 1941, 147 Fla. 480, 3 So.2d 364.
"The fact that the properties involved here are much more valuable for hotels and apartments than they are for single family residences does not conclude the point of whether or not the ordinance is `fairly debatable'. This is a factor that must be weighed against the public welfare or the effect on the community at large. * * *" City of Miami Beach v. Lachman, Fla. 1953, 71 So.2d 148.
We are unable to say that the question before us is not a fairly debatable one and, therefore, like the court below, we are not authorized to substitute our judgment for that of the legislative body of the Town of Jupiter Island.
Affirmed.
ALLEN and WHITE, JJ., concur.